19 P.3d 1241

**Roger HOBSON, a single individual; Robert Q. Hoyt, Esq., a single individual; Robert Q. Hoyt, P.C., Plaintiffs/Appellants,**

v.

**MID–CENTURY INSURANCE COMPANY, Defendant/Appellee.**

**Juano Morales and Shawna Morales, husband and wife; Robert Q. Hoyt, Esq., a single individual; Robert Q. Hoyt, P.C., Plaintiffs/Appellants,**

v.

**State Compensation Fund, Inc., Defendant/Appellee.**

Nos. 2 CA–CV 99–0222, 2 CA–CV 00–0118.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 27, 2001.

---

Law Office of Bruce A. Burke, P.C., by Bruce A. Burke, Tucson, for plaintiffs/appellants.

Robert E. Wisniewski, P.C., by Robert E. Wisniewski, Phoenix, for defendant/appellee, Mid–Century Insurance Company.

Diana J. Simon, P.C., by Diana J. Simon, Tucson, for defendant/appellee, State Compensation Fund, Inc.

## OPINION

PELANDER, J.

¶ 1 In these two cases, consolidated for appeal, the trial courts ruled as a matter of law that A.R.S. § 23–1023(C) does not permit an order compelling a workers' compensation lienholder to pay, from the amount it is paid on account of its statutorily prescribed lien, an equitable share of the attorney's fees and costs incurred by the claimant in a third-party tort action. The trial courts also ruled that, so construed, § 23–1023 does not unconstitutionally violate the separation of powers doctrine by infringing on the superior courts' equitable power. Because we agree with those rulings, we affirm.

## BACKGROUND

¶ 2 These cases have similar, undisputed facts. After plaintiff/appellant Roger Hobson sustained an industrial injury, his employer's workers' compensation carrier, defendant/appellee Mid–Century, accepted his claim and paid him benefits in excess of $36,000. Hobson, through his attorney Robert Q. Hoyt, then pursued a third-party action which eventually settled for $33,000, with Mid–Century's approval. After deduction of Hoyt's attorney's fee and costs, Mid–Century ultimately received $20,698.13 in payment of its workers' compensation lien pursuant to § 23–1023.

¶ 3 Hoyt then requested Mid–Century to pay a portion ($6,899.38) of his one-third contingency fee from its lien proceeds. When Mid–Century refused to do so, Hobson and Hoyt (collectively Hobson) filed a declaratory relief action against Mid–Century.[1] Relying on the equitable "common fund" doctrine, Hobson requested the trial court to order Mid–Century to pay a proportionate share of the attorney's fees incurred in the third-party action. Mid–Century moved to dismiss the complaint. In granting that motion, the trial court noted that Mid–Century's refusal to pay a proportionate share of Hobson's attorney's fees was "unfair and works an apparent injustice" but that Hobson's "common fund" theory was "inconsistent with the clear language of A.R.S. § [23]–1023(C) and existing case law." Hobson's appeal fol-

---

1. Hoyt refunded $6,899.38 of his attorney's fee to Hobson.

lowed the trial court's entry of judgment in favor of Mid–Century.

¶ 4 Plaintiff/appellant Juano Morales also sustained an industrial injury and received workers' compensation benefits totaling $45,193.71 from his employer's workers' compensation carrier, the State Compensation Fund (SCF). Morales, through Hoyt, brought a third-party action which ultimately settled for $250,000, with SCF's consent. From that amount, Hoyt received $100,000, representing his forty percent contingency fee, plus $10,000 in costs; SCF received payment in full on its lien of $45,193.71; and Morales received the balance of $94,806.29, on which SCF asserted a "credit lien" against any incurred but unpaid workers' compensation benefits or benefits to be paid in the future and related to the same injury.

¶ 5 Hoyt and Morales (collectively Morales) then made a claim against SCF pursuant to A.R.S. § 12–821.01, seeking forty percent (or $18,077.48) of the money paid to SCF on its lien, plus forty percent (or $4,000) of the costs Hoyt had expended in prosecuting the third-party action. The claim also sought a forty percent (or $37,922.52) reduction from SCF's asserted "credit lien" on the settlement proceeds that Morales had received. After SCF failed to respond to the claim, Morales filed a declaratory relief action against SCF alleging the aforementioned claims and essentially seeking the same type of equitable relief that Hobson had sought: an order, pursuant to the common fund doctrine, requiring SCF to pay a proportionate share of attorney's fees and costs incurred in the third-party action. The trial court granted SCF's motion for summary judgment, and Morales's appeal followed.

### DISCUSSION

¶ 6 Because the underlying facts in both cases are undisputed, we determine de novo whether the trial courts correctly interpreted and applied the relevant substantive law. *Bills v. Arizona Property and Cas. Ins. Guar. Fund,* 194 Ariz. 488, ¶ 6, 984 P.2d 574, ¶ 6 (App.1999). We also review de novo statutory interpretation issues and constitutional claims. *Id.* At the heart of these appeals is § 23–1023(C). As amended in 1965 and again in 1968, that statute provides in pertinent part:

> If [the employee] proceeds against such other [third-party tortfeasor], compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier ... shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. *This lien shall not be subject to a collection fee.* The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery. . . .

(Emphasis added.) The 1968 amendment to the statute added the italicized sentence concerning "a collection fee."

¶ 7 Hobson and Morales (collectively plaintiffs) contend the trial courts misread § 23–1023(C) to preclude apportionment against the carriers of attorney's fees and costs incurred in plaintiffs' third-party actions. According to plaintiffs, the 1968 amendment "introduces ambiguities" as to whether the statute prohibits such apportionment. Plaintiffs maintain that a "collection fee" and "attorney's fee" are not synonymous. The former, they argue, only refers to "an amount paid to a debt collector for efforts to collect a judgment which has already been secured but (perhaps because the judgment debtor is a 'deadbeat' or uninsured) has not been paid." In contrast, plaintiffs argue, the phrase "attorneys' fees" in § 23–1023(C) only refers to "the fee earned by the tort lawyer in the course of the third-party litigation, which culminates in reducing the [plaintiffs'] claim to a judgment." Based on that alleged distinction, plaintiffs further contend the statute does not preclude "an award of an 'attorneys' fee' from the lien amount paid from [a] tort settlement." Absent any express prohibition, plaintiffs argue, trial courts may invoke their equitable power, pursuant

to the common fund doctrine, to apportion part of the attorney's fee against the workers' compensation lien.

■■ ¶ 8 Our primary goal in interpreting statutes is to discern and give effect to legislative intent. *Bills,* 194 Ariz. 488, ¶ 6, 984 P.2d 574, ¶ 6. We focus on the language of a statute and, if it is inconclusive or ambiguous, we then consider other factors such as the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose. *Id. See also Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) ("If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation.").

■ ¶ 9 Several insurmountable hurdles defeat plaintiffs' argument. First, we find no ambiguity in § 23–1023(C); nor have other courts that have construed it. As our supreme court has stated: "Under the language of the Arizona statute, the proper computation of the compensation carrier's lien is first to deduct from the amount of the settlement the attorney's fees and reasonable and necessary costs of the litigation. The remainder is the amount against which the insurance carrier has a lien." *Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.,* 111 Ariz. 259, 262, 527 P.2d 1091, 1094 (1974). *See also Polito v. Industrial Comm'n,* 171 Ariz. 46, 48, 828 P.2d 182, 184 (App.1992) (noting that "the lien attaches to the entire third-party recovery (less expenses and attorney's fees)," and finding "no ambiguity or conflict in the statute"); *Martinez v. Industrial Comm'n,* 168 Ariz. 307, 309–10, 812 P.2d 1125, 1127–28 (App.1991) ("The language of the lien statute unambiguously states that the lien attaches to the 'total recovery' obtained from a third party."); *Young v. Industrial Comm'n,* 146 Ariz. 582, 584, 707 P.2d 986, 988 (App.1985), *quoting* § 23–1023(C) ("The statute allows the carrier to assert a lien on the 'amount actually collectable,'" which "is defined as including 'the total recovery' less specified deductions for expenses and attorney's fees.").

■ ¶ 10 Second, our supreme court has rejected plaintiffs' proffered interpretation of § 23–1023(C). In the *Liberty Mutual* case, as in these cases, the plaintiffs sought "a declaratory judgment that [the workers' compensation carrier] was not entitled to have the full amount of its alleged liens repaid in that attorney's fees and expenses should first be deducted." 111 Ariz. at 260, 527 P.2d at 1092. Construing the 1968 version of the statute, the court rejected that claim by holding that § 23–1023(C) does not "permit[ ] the workmen's compensation carrier's lien to be depleted by the amount of the employee's attorney's fees and reasonable expense of litigation." *Id.* at 261, 527 P.2d at 1093. This court, of course, is bound by applicable supreme court authority. *McKay v. Industrial Comm'n,* 103 Ariz. 191, 438 P.2d 757 (1968); *City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993).

¶ 11 As plaintiffs correctly note, the court in *Liberty Mutual* referred to its prior holding in *Ruth v. Industrial Commission,* 107 Ariz. 572, 490 P.2d 828 (1971), in which it had interpreted the 1965 version of the statute. In *Ruth,* as in these cases, the plaintiffs had claimed that the workers' compensation carrier should "pay its fair share" of the reasonable attorney's fees and expenses actually incurred in securing the third-party recovery. *Ruth v. Industrial Comm'n,* 14 Ariz. App. 324, 327, 483 P.2d 65, 68, *vacated in* 107 Ariz. 572, 490 P.2d 828 (1971). Our supreme court expressly agreed with the court of appeals' rejection of that claim and with that court's conclusion that, under the 1965 statute, "'the insurer *could not be required* to pay its fair share.'" *Ruth,* 107 Ariz. at 575, 490 P.2d at 831, *quoting* 14 Ariz.App. at 328, 483 P.2d at 69 (emphasis in court of appeals' opinion).

¶ 12 By confirming in 1974 its prior holding in *Ruth* that "the employer's insurer could not be required to pay a share of the attorney's fees," our supreme court implicitly rejected the notion that the 1968 amendment supported a different conclusion. *Liberty Mut.,* 111 Ariz. at 261, 527 P.2d at 1093. *Liberty Mutual* essentially negates plaintiffs'

contention that that amendment somehow changed the statute's meaning or effect. And, that decision rebuts the general presumption that, "by amending a statute, the legislature intends to change the existing law." *Metro Collections v. Meggers,* 180 Ariz. 570, 572, 886 P.2d 649, 651 (App.1994).[2] Indeed, because collection fees are analogous to, and arguably broader than, attorney's fees,[3] it would be incongruous to effectively reduce the lien under § 23–1023(C) based on the 1968 amendment. Thus, in our view, the 1968 amendment did no more than clarify the statute and was not merely intended "to prohibit the lien from further reduction after the third party judgment is obtained and collection efforts against the third party defendant must be commenced," as plaintiffs suggest. *See City of Mesa v. Killingsworth,* 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964) ("An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.").

¶ 13 Third, Hobson's contention that "[a] majority of the courts now require apportionment of the attorneys [sic] fee to the lienholding beneficiary of the attorney's effort" misses the mark. His reliance on two out-of-state cases to support that proposition is misplaced. *See Keeler v. Harford Mut. Ins. Co.,* 672 A.2d 1012 (Del.1996); *Ahlers v. EMCASCO Ins. Co.,* 548 N.W.2d 892 (Iowa 1996). Unlike the Delaware and Iowa statutes, § 23–1023(C) does not require or authorize trial courts to order partial payment of attorney's fees from funds paid a workers' compensation carrier on account of its statutorily prescribed lien on the "amount actually

collectable" on a third-party claim. In short, our statute differs from many other state statutes that either permit apportionment of fees incurred on third-party claims or are totally silent on the subject of attorney's fees. *See, e.g., Quinn v. State,* 15 Cal.3d 162, 124 Cal.Rptr. 1, 539 P.2d 761, 766 (1975) (statute required "application of the equitable principle of reasonable apportionment" of attorney's fee); *County Workers Compensation Pool v. Davis,* 817 P.2d 521 (Colo.1991) (statute that was silent on whether carrier should bear any responsibility for attorney's fees on third-party claim permitted court to assess reasonable share of such fees against carrier).

¶ 14 As the leading workers' compensation treatise points out:

> Under the type of statute that states that attorneys' fees and expenses shall first be deducted from a third-party recovery both in priority to the employer's lien and before there is any excess for the employee, the employee's attorneys' fees are generally not deducted from the employer's share in the fund recovered.

6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 117.02[1][c], at 117–14 to 117–15 (2000). Arizona's statute falls in that category. *Id.* § 117.02D[1][c], at D117–79. *See also Rhoad v. McLean Trucking Co., Inc.,* 102 Wash.2d 422, 686 P.2d 483 (1984) (recognizing three categories of workers' compensation lien provisions and noting that Arizona's statute does not provide for apportionment of fees).

▇▇▇▇ ¶ 15 Relying on the common fund doctrine, however, plaintiffs contend ¶ 23–

---

**2.** In addition, "[a]lthough not determinative," that the legislature has not substantively changed § 23–1023(C) from 1968 to date suggests its approval of, or acquiescence in, our supreme court's construction of the statute in *Liberty Mutual. See Bills,* 194 Ariz. 488, ¶ 13 n. 9, 984 P.2d 574, ¶ 13 n. 9.

**3.** Plaintiffs cite neither legal authority nor legislative history to support their proffered distinction between the "collection fee" and "attorneys' fees" referred to in § 23–1023(C). Moreover, no such distinction is clear in the law. *See Grant Road Lumber Co., Inc. v. Wystrach,* 140 Ariz. 479, 481, 682 P.2d 1146, 1148 (App.1984) ("charging

of attorney's fees" is "analogous to the charging of collection fees"); *cf. Leavitt v. Hamelin,* 126 N.H. 670, 495 A.2d 1286, 1287–88 (1985), *quoting* N.H.Rev.Stat.Ann. § 544–A:2 (statute permitting recovery of " 'all reasonable costs of collection' " included award of attorney's fees); *McClain v. Continental Supply Co.,* 66 Okla. 225, 168 P. 815, 818 (1917) ("In a strict legal sense 'collection fees' might be a broader term than 'attorney's fees,' " but courts have "treated them as synonymous terms when used in promissory notes").

1023(C) does not "foreclos[e] the court's exercise of its equity power to apportion the attorneys' fee among those parties who benefitted from the attorneys' work." "The common fund doctrine is a general rule of equity that 'a person or persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund.'" *LaBombard v. Samaritan Health System,* 195 Ariz. 543, ¶ 22, 991 P.2d 246, ¶ 22 (App.1998), *quoting In re Estate of Brown,* 137 Ariz. 309, 312, 670 P.2d 414, 417 (App.1983). But "lien rights are statutory." *LaBombard,* 195 Ariz. 543, ¶ 17, 991 P.2d 246, ¶ 17. And, "'where rights are clearly established and defined by statute, equity has no power to change or upset such rights.'" *In re Maricopa County Juvenile Action No. JV–128676,* 177 Ariz. 352, 356, 868 P.2d 365, 367 (App.1994), *quoting Ayer v. General Dynamics Corp.,* 128 Ariz. 324, 326, 625 P.2d 913, 915 (App.1980). *See also LaBombard,* 195 Ariz. 543, ¶ 22, 991 P.2d 246, ¶ 22 ("[I]f the statute clearly provides that the [lienholder] is not required to pay a proportionate share of attorneys' fees, we will not apply the equitable [common fund] doctrine to circumvent the statute."); *cf. Stout v. State Compensation Fund,* 197 Ariz. 238, 3 P.3d 1158 (App.2000) (declining to apply equitable apportionment of fault to reduce carrier's lien when third-party claim is settled). As our supreme court has stated, "[w]hile [§ 23–1023(C) ] may have an inequitable result in certain cases, the legislature has clearly established in the wording of the statute that the entire recovery be subject to the compensation carrier's lien with only the specific exceptions noted" in the statute itself. *Hendry v. Industrial Comm'n,* 112 Ariz. 108, 109, 538 P.2d 382, 383 (1975).

¶ 16 *LaBombard,* on which plaintiffs rely, is distinguishable and cannot override the foregoing principles. *Cf. Bloomer v. Liberty Mut. Ins. Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) (compensation insurer's reimbursement from proceeds of third-party action by longshoreman not reduced by proportionate share of his costs, including attorney's fees, under equitable "common fund"

doctrine, which must yield to attorney's fee allocation scheme embodied in Longshoremen's Act). Unlike § 23–1023(C), the hospital lien statute at issue in *LaBombard,* A.R.S. § 33–931, did not provide for a deduction of attorney's fees and costs "off the top" in computing the lien. Indeed, § 33–931 established a lien for "customary charges," but otherwise was silent on how the lien should be computed.

¶ 17 Moreover, *LaBombard* involved somewhat unique circumstances in which the hospital was "prohibited from pursuing the patient directly to obtain payment" and had "only a contingent interest in litigation." 195 Ariz. 543, ¶ 31, 991 P.2d 246, ¶ 31. In the workers' compensation context, however, a third-party claim is automatically assigned to the carrier, which then acquires an independent right to proceed against the third-party tortfeasor, if the injured employee does not timely pursue a remedy against that third party. § 23–1023(B). In view of *Liberty Mutual* and the lien arrangement embodied in Arizona's comprehensive workers' compensation system, the common fund doctrine does not authorize a court to equitably apportion attorney's fees and costs against a workers' compensation lien when the statute, as construed by our supreme court, clearly prohibits that.

¶ 18 Morales also contends that, because § 23–1023(C) is silent as to "credit liens," equitable apportionment of fees as to such prospective liens is not prohibited. Under well-established Arizona law, "a carrier is entitled to assert a lien for contingent future benefits against the amount recovered in a third-party action." *Young,* 146 Ariz. at 583 n. 2, 707 P.2d at 987 n. 2. *See also Carter v. Industrial Comm'n,* 182 Ariz. 128, 130–31, 893 P.2d 1291, 1293–94 (1995); *Hendry.* Even assuming that Morales did not waive this issue by failing to properly present it in the trial court, we find no basis to distinguish existing liens from credit liens in determining the "amount actually collectable" for purposes of § 23–1023(C).

¶ 19 Finally, we reject plaintiffs' constitutional claim that § 23–1023(C), as consis-

**532**

tently construed from 1965 to date, violates the separation of powers by encroaching on the superior court's jurisdiction to fashion and impose equitable remedies.[4] *See* Ariz. Const. art. 3. As the court in *Liberty Mutual* stated: "The Legislature has required that the entire recovery from a third party less expenses and attorney's fees be subject to the compensation carrier's lien.... While this may work an inequitable result in some instances, the statute has a reasonable basis and is therefore within the proper sphere of legislative action." 111 Ariz. at 263, 527 P.2d at 1095. *See also Young*, 146 Ariz. at 585, 707 P.2d at 989 ("[W]ith the exception of the specific statutorily authorized deductions, a carrier's lien extends to the total recovery collected by the claimant, and even though the courts might consider the result inequitable, the remedy lies with the legislature."); *Travelers Ins. Co. v. Breese*, 138 Ariz. 508, 512, 675 P.2d 1327, 1331 (App.1983) ("[T]he language of § 23–1023 will not be ignored for the sake of avoiding an alleged" inequitable result, even when the result favors the claimant by arguably permitting a "double recovery.").

¶ 20 Plaintiffs have cited no authority, nor have we found any, to suggest that legislative restrictions on the assessment or apportionment of attorney's fees somehow violate the separation of powers. Indeed, Division One of this court has held that legislative abrogation of joint and several liability, a step that clearly and dramatically affected the scope of remedy available through the judiciary, did not violate the separation of powers. *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 352, 842 P.2d 1355, 1365 (App.1992). When, as here, the legislature has clearly spoken by statute on a substantive matter within its domain, the courts will not interfere, under the guise of its equitable powers, with proper application of such statute. *Cf. In re Marriage of Worcester*, 192 Ariz. 24, 27, 960 P.2d 624, 627 (1998).

---

4. Arizona's constitution invests the superior court with original jurisdiction in "[c]ases of equity and at law which involve the title to or possession of real property, or the legality of any

## DISPOSITION

¶ 21 The trial court's judgments in these two cases are affirmed.

BRAMMER, Presiding J., and FLÓREZ, J., concurring.

tax, impost, assessment, toll or municipal ordinance." Ariz. Const. art. 6, § 14(2). It is debatable whether this case fits within any of those categories.