28 P.3d 948

The ARIZONA LIBERTARIAN PARTY; Elizabeth A. Brandenburg–Andreasen; Ernest Hancock; The Arizona Democratic Party; and The Arizona Republican Party, Plaintiffs–Appellees, Cross Appellants,

v.

Peter SCHMERAL; Katherine Gallant; and The Arizona Libertarian Party, Inc., Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 00–0335.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 16, 2001.

As Corrected Sept. 20, 2001.

**488**

Brown & Bain, P.A. by John A. Buttrick, Phoenix, Attorneys for Plaintiffs–Appellees, Cross Appellants Arizona Libertarian Party and Brandenburg–Andreasen.

Kimerer & Lavelle, P.L.C. by Thomas V. Rawles, Phoenix, Attorneys for Plaintiff–Appellee, Cross Appellant Hancock.

Goodwin Raup, P.C. by Marty Harper, Phoenix, Attorneys for Plaintiff–Appellee, Cross Appellant Arizona Democratic Party.

Martinez & Curtis, by Joseph F. Abate, Phoenix, and Hallman & Affiliates by Hugh L. Hallman, Tempe, Attorneys for Plaintiff–Appellee, Cross Appellant Arizona Republican Party.

David T. Hardy, Tucson, Attorney for Defendants–Appellants, Cross Appellees.

## OPINION

BERCH, Judge.

¶ 1 In this opinion, we address a challenge by the Arizona Libertarian Party and two of its leaders, the Arizona Democratic Party, and the Arizona Republican Party to the constitutionality of statutes governing the selection of some internal party leaders. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 16–824 to –828 (1996). We affirm the trial court's ruling that these statutes are constitutional, but reverse that portion of the judgment holding that the Libertarian Party did not need to comply with the statutory process.

## BACKGROUND

¶ 2 By virtue of votes cast for its candidates in the 1994 election, the Arizona Libertarian Party attained continuing ballot access status. This status entitled the party to receive voluntary contributions from Arizona taxpayers and a free copy of voter registration data, but imposed upon the party the obligation to select party representatives pursuant to a statutory scheme. *See* A.R.S. §§ 16–807 (1996) (contributions), 16–168 (Supp.2000) (voter data), 16–821 to –828 (1996) (selection of representatives).

¶ 3 One branch of the party, represented here by Appellants, although chafing at the statutory requirements, followed the statutory scheme in electing its party representatives. Another faction, believing the statutes to be unconstitutional, simply disregarded them and selected its leadership at its annual convention, as it had done in the past. This group is represented by Appellees.

¶ 4 As a result of these intra-party elections, the Libertarian Party had two putative chairs of state committees and two chairs of Maricopa County Committees. Both sets of party representatives sought copies of the voter registration and voter history data from the Maricopa County Recorder, who filed this declaratory judgment action to determine which was entitled to receive the information.

¶ 5 The trial court held that Appellees were the representatives entitled to receive

the registry on behalf of the party, a result that Appellants contest. The trial court based its ruling on alleged procedural irregularities in the vote at Appellants' state convention. It also affirmed the constitutionality of the statutory scheme for selecting party leadership. Because we concur that the challenged statutes do not impermissibly burden the First Amendment rights of free speech and association and must be followed by those claiming rights as parties with continuing status, we affirm but modify the ruling of the trial court on these points. We address Appellants' challenges to the trial court's rulings regarding the votes at the state convention in a separate memorandum decision. *See Fenn v. Fenn,* 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993); ARCAP 28(g).

## ANALYSIS

### A. Are the Challenged Statutes Mandatory or Permissive?

■ ¶ 6 Appellees, joined by the intervenor Democratic and Republican Parties,[1] challenge the constitutionality of A.R.S. §§ 16–824 to –828, the statutes that set forth the system for selecting party representatives, as unduly burdening the freedoms of speech and association guaranteed by the First Amendment to the United States Constitution. They note, however, that these statutes may not impermissibly infringe these rights if the court construes the statutes as permissive rather than mandatory. We therefore first address whether the statutes Appellees challenge are mandatory, for if the statutes are merely permissive and

may be ignored, we may avoid the constitutional issue. *Aitken v. Indus. Comm'n,* 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995) (admonishing courts to avoid deciding cases on constitutional grounds if possible to do so).

¶ 7 Two of the challenged statutes set forth, in seemingly mandatory terms, the statutory system for selecting chairs of the state and county committees. A.R.S. §§ 16–824(A) (county), 16–825 (state). Section 16–824 requires that the county committee "shall" meet, directs generally when it must do so and that notice of the time and place of such meeting "shall" be given, and requires that the chair of the county committee "shall" be an *ex officio* member of the state committee. Section 16–825 directs the composition of the state committee. *Id.* ("The state committee of each party *shall* consist" of required members.) (emphasis added).[2]

¶ 8 The pyramid-shaped system for selecting party representatives is founded, however, on section 16–821, which Appellees have not challenged. That statute requires that members of political parties "shall" choose county precinct committeemen and "shall" choose one additional precinct committeeman for each 125 voters registered in the party in the precinct. Although Appellees challenge only A.R.S. §§ 16–824 to –828 and not 16–821, the later-numbered sections apply only after the party has elected precinct committeemen as set forth in section 16–821, and Appellees base two arguments on the language of section 16–821.

¶ 9 First, Appellees note that party members cannot be forced to vote for precinct committeemen. Thus they argue that sec-

---

1. The trial court allowed the parties to file a realigned complaint naming Michael Voth, Ernest Hancock, the ALP, the Arizona Democratic Party, and the Arizona Republican Party as Plaintiffs, and the Maricopa County Recorder, Peter Schmerl, Katherine Gallant, and the Arizona Libertarian Party, Inc., as Defendants. Elizabeth A. Brandenburg–Andreasen was later substituted for Michael Voth. The County Recorder deposited the voter data with the court and was dismissed from the action.

2. The other challenged statutes are similarly couched in mandatory terms. Section 16–825.01 describes when vacancies in the state committee "shall" exist and how such vacancies "shall" be filled. Section 16–826(A) requires that the state committee "shall" meet in the state capitol dur-

ing a certain time and must organize by electing "a chairman, a secretary, and a treasurer." The statute also charges that notice "shall" be given of the time and place of the meeting. Section 16–827 specifies that the state executive committee "shall" consist of specified persons and requires that the chairman of the state committee "shall" serve as the *ex officio* chairman of the executive committee. The legislature knows how to use non-mandatory language when it wishes to do so. Another provision of section 16–827 provides that state committee bylaws "may" provide for additional voting members or *ex officio* members of the executive committee, and section 16–828 provides that a political party "may" allow the use of proxies at its meetings. Using "shall" language, the statute then sets minimum regulations for proxies.

tion 16–821 is not mandatory, despite its seemingly mandatory terms. In addition, they reason, paragraph B of section 16–821 provides a means for appointing precinct committeemen to fill vacant positions, which may occur, among other ways, if a precinct committeeman position is not filled in a primary election. According to Appellees, this statute provides two examples of instances in which "shall" cannot be deemed to be mandatory and instead must be interpreted as permissive. Thus, argue Appellees, the provisions in A.R.S. §§ 16–824 to –828 also should be interpreted as being permissive.

¶ 10 We find this analysis strained. In interpreting statutes, we strive to give words their ordinary, common-sense meaning. Ordinarily, the use of the word "shall" indicates a mandatory directive from the legislature. *Ins. Co. of N. Am. v. Santa Cruz Superior Court,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990); *Matter of Guardianship of Cruz,* 154 Ariz. 184, 185, 741 P.2d 317, 318 (App.1987). We acknowledge that "shall" may be interpreted as indicating desirability, preference, or permission, rather than mandatory direction, *e.g., Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n,* 160 Ariz. 350, 360, 773 P.2d 455, 465 (1989); *Hampton v. Glendale Union High School Dist.,* 172 Ariz. 431, 434, 837 P.2d 1166, 1169 (App.1992), if the context and purpose of the legislation indicate that the term should be so construed. *See Ariz. Downs v. Ariz. Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981); *State v. Sanchez,* 119 Ariz. 64, 68, 579 P.2d 568, 572 (App.1978). But we are not persuaded that the context requires such a construction here.

¶ 11 A common-sense and contextualized reading of the statutes before us imposes upon a political party entitled to continued representation the obligation to select its representatives in a certain manner. That party members cannot be forced to vote does not negate the party's obligation to attempt to fill positions through statutorily prescribed means.

¶ 12 The challenged statutes serve an important public purpose. By setting forth the

procedures for selecting party leaders, the statutes provide the means by which government officials can determine the identity of the legal representatives of political parties so that the government officials may perform their statutory duties. *See* A.R.S. § 16–168(C). To deliver precinct registers to "each county or state chairman who is eligible to receive copies of precinct registers," the county recorders must be able to ascertain who those representatives are. *Id.* The legislature facilitated this determination by providing a statutory method for choosing these party leaders. We conclude that the legislature intended that the parties follow these statutes and that the use of the word "shall" in the statutes at issue indicates that adherence to those statutes be mandatory, not permissive. *Michael J., Jr. v. Michael J., Sr.,* 198 Ariz. 154, 157–58, 7 P.3d 960, 963–64 (App.2000) (court construes statutes to give effect to legislative intent). Appellees suggest that other methods exist by which parties could identify their representatives. While that may be true, we leave the choice to the legislature, as long as the method selected comports with the constitution, an issue we resolve in the following section.

### B. Constitutionality of A.R.S. §§ 16–824 to –828

¶ 13 Appellees argue on cross-appeal that, if determined to mandatorily apply, A.R.S. §§ 16–824 to –828 are unconstitutional. Legislative enactments, however, are presumed to be constitutional. *Kotterman v. Killian,* 193 Ariz. 273, 284, ¶ 31, 972 P.2d 606, 617, *cert. denied,* 528 U.S. 921, 120 S.Ct. 283, 145 L.Ed.2d 237, and *cert. denied sub nom. Rhodes v. Killian,* 528 U.S. 810, 120 S.Ct. 42, 145 L.Ed.2d 38 (1999). The burden of demonstrating unconstitutionality rests on the party challenging a statute, and we resolve any doubts in favor of constitutionality. *Id.* Moreover, we have a duty to construe statutes to give them a "reasonable and constitutional meaning." *Ariz. Downs,* 130 Ariz. at 554, 637 P.2d at 1057 (citing *Stewart v. Robertson,* 45 Ariz. 143, 40 P.2d 979 (1935)).[3]

¶ 14 As noted above, once a political party in Arizona becomes entitled to continued rep-

---

**3.** Statutes that do not regulate the content of speech, but rather place only an incidental burden on First Amendment rights do not run afoul

of the First Amendment if they further "an important or substantial governmental interest; if the governmental interest is unrelated to the

resentation, *see* A.R.S. § 16–804(B) (Supp. 2000), the challenged statutes require that the party be organized and select its leadership in a particular way. A.R.S. §§ 16–824 to –828; *see also* A.R.S. §§ 16–821 to –823 (organizational statutes not challenged). Appellees contend that this state-designated organizational structure unconstitutionally burdens the freedoms of speech and association guaranteed by the First Amendment to the United States Constitution.[4]

¶ 15 The statutory scheme in question starts with A.R.S. § 16–821, which requires the election of precinct committeemen. However, Appellees have not challenged this statute or the following two. Nevertheless, they maintain that because section 16–821 forms the foundation for the statutes that follow, it renders constitutionally infirm the statutes they have challenged. As they note, one must be selected pursuant to section 16–821 as a precinct committeeman to be entitled to vote at county and state committee meetings and to serve as a county committee officer, a state committeeman, or a state officer. This, Appellees argue, unconstitutionally restricts the pool of potential internal party officers, limits those who can vote in the internal elections for party officers, and interferes with the party members' ability to associate freely.

¶ 16 The First Amendment does protect the freedom to join with others to further common political beliefs. *California Democratic Party v. Jones*, 530 U.S. 567, 574, 120 S.Ct. 2402, 2408, 147 L.Ed.2d 502 (2000). This freedom of association applies to partisan political organizations and, as a result, the "government, structure, and activities [of political parties] enjoy constitutional protection." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986). This freedom encompasses the right to decide who represents the party and, to some extent, the process for electing those persons. *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 229–30, 109 S.Ct. 1013, 1023–24, 103 L.Ed.2d 271 (1989) (holding that a state may not dictate the internal affairs of a political party). The First Amendment's freedom to associate applies to state governments as well as to the federal government. *Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 121, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981). Indeed, freedom to associate to advance "beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958).

¶ 17 Despite these protections, however, the United States Supreme Court has recognized that a state "indisputably has a compelling interest in preserving the integrity of its election process." *Eu*, 489 U.S. at 231, 109 S.Ct. at 1024. "[I]t is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, 520 U.S. at 358, 117 S.Ct. at 1369; *see also Bush v. Gore*, 531 U.S. 98, 104, 121 S.Ct. 525, 529, 148 L.Ed.2d 388 (2000) (noting that "the State legislature's power to select the manner for appointing electors is plenary").[5] This regula-

---

suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Martin v. Reinstein*, 195 Ariz. 293, 320–21, ¶ 98, 987 P.2d 779, 806–07 (App.1999) (citing *United States v. Albertini*, 472 U.S. 675, 687–88, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985), which quotes *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968)).

4. The parties' briefs mentioned the phrase "free speech" in passing, but did not develop the argument that the statutes at issue violate protections against interference with their right to freely express their political message. We therefore do not address the argument. *State v. $5,500.00 in United States Currency*, 169 Ariz. 156, 158 n. 7, 817 P.2d 960, 962 n. 7 (App.1991).

The attorney general has been notified of Appellees' claim that the challenged statutes are unconstitutional, *see* A.R.S. § 12–1841 (Supp. 2000), but has not appeared in these proceedings to defend the statutes.

5. The concurring opinion of Chief Justice Rehnquist, with which Justices Scalia and Thomas join, recites the article II basis of the "broad power" of state legislatures to determine the manner of selecting presidential electors. *Bush*, 531 U.S. at 113, 121 S.Ct. at 534 (citing U.S.

tory authority arises from the broad power granted to the states to prescribe the time, place, and manner of holding elections for federal offices and from state authority over the election process for state offices. *Tashjian,* 479 U.S. at 217, 107 S.Ct. at 550. Thus, "[n]either the right to associate nor the right to participate in political activities is absolute." *United States Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973).

¶ 18 A court called upon to decide whether a state election law violates First Amendment associational rights must weigh the "character and magnitude"—that is, the quality and extent—of the burden the law imposes on those rights against the interests that arguably justify the burden. *Timmons,* 520 U.S. at 358, 117 S.Ct. at 1370. If the statutes severely burden protected rights, we will uphold them only if they are narrowly tailored and advance a compelling state interest. *Id.* Lesser burdens are subject to less exacting review and will survive challenge if they further a state's "important regulatory interests." *Id.* We must therefore determine the nature and scope of the burden on Appellees' rights, then apply the appropriate test. We examine the burden in light of Supreme Court decisions analyzing similar facts and statutorily imposed burdens.

¶ 19 In *Marchioro v. Chaney,* 442 U.S. 191, 99 S.Ct. 2243, 60 L.Ed.2d 816 (1979), the Supreme Court considered a Washington statute that required each major political party to have a state committee consisting of two persons from each county in the state. Like its Arizona counterpart, the Washington statute gave the state committee the power to call conventions, fill vacancies on the party ticket, and provide for the nomination of presidential electors and for the election of delegates to national conventions. *See id.* at 193, 99 S.Ct. at 2245. The Court noted that the party rules made the state convention rather than the state committee the governing body of the party. *Id.*

Const. art. II, § 1, cl. 2; *McPherson v. Blacker,* 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892)). Although *Bush v. Gore* discusses the states' au-

¶ 20 In addressing the contention that the statutory restriction on the composition of the state committee violated the right to freedom of association, the Court observed that the requirement that political parties form committees composed of specified representatives is common in the election laws of the states. *Id.* at 195, 99 S.Ct. at 2246. The Court reasoned that the requirements further the state's interest in ensuring fair, orderly, and honest elections:

These laws are part of broader election regulations that recognize the critical role played by political parties in the process of selecting and electing candidates for state and national office. The State's interest in ensuring that this process is conducted in a fair and orderly fashion is unquestionably legitimate; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." That interest is served by a state statute requiring that a representative central committee be established, and entrusting that committee with authority to perform limited functions, such as filling vacancies on the party ticket, providing for the nomination of Presidential electors and delegates to national conventions and calling statewide conventions. Such functions are directly related to the orderly participation of the political party in the electoral process.

*Id.* at 195–97, 99 S.Ct. at 2246–47 (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)). The Court thus found that the statute did not impose substantial and hence impermissible burdens on the party's right to govern its affairs. *Id.* at 199, 99 S.Ct. at 2248.

¶ 21 Appellees claim that the case before us is not like *Marchioro,* but rather resembles *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. at 214, 109 S.Ct. at 1013. In *Eu,* the plaintiff political party challenged sections of the California Election Code that dictated the size and composition

thority to direct the method for selecting presidential electors, the state legislatures' authority in state election processes is equally obvious.

of the state central committees, set forth rules governing the selection and removal of committee members, fixed the maximum term of office for the chair of the state central committee, required that the chair rotate between the residents of northern and southern California, specified the time and place of committee meetings, and limited the dues the parties could impose on members. *Id.* at 218–19, 109 S.Ct. at 1017–18. The official governing bodies required by statute were responsible for conducting the party's campaigns. *Id.* at 216–17, 109 S.Ct. at 1016–17.

¶ 22 In *Eu*, the Court noted that freedom of association "encompasses a political party's decisions about the identity of, and the process for electing, its leaders" as well as the determination of the best structure for the party. *Id.* at 229, 109 S.Ct. at 1023. The Court concluded that the laws at issue unduly burdened the rights of political parties because "[b]y requiring parties to establish official governing bodies at the county level, California prevents the political parties from governing themselves with the structure they think best. And by specifying who shall be the members of the parties' official governing bodies, California interferes with the parties' choice of leaders." *Id.* at 230, 109 S.Ct. at 1024. The Court did not find persuasive the state's contention that the challenged laws served a compelling "interest in the 'democratic management of the political party's internal affairs.'" *Id.* at 232, 109 S.Ct. at 1025. Therefore, the Court held the challenged California election laws unconstitutional. *Id.* at 233, 109 S.Ct. at 1025.

¶ 23 When a state regulates the internal processes of political parties, it must act within limits imposed by the Constitution. *Jones*, 530 U.S. at 573, 120 S.Ct. at 2407. Unfortunately, "[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms," *Timmons*, 520 U.S. at 359, 117 S.Ct. at 1370; no "litmus-paper test" separates valid from invalid restrictions. *Tashjian*, 479 U.S. at 213, 107 S.Ct. at 548.

¶ 24 In examining the challenged statutes before us, we recognize that they do restrict associational rights. We conclude, however, that Arizona's statutes are more like the statutes upheld by the Court in *Marchioro* than the statutes struck down by the Court in *Eu*. The statutes at issue do not force political parties to assign vital internal functions—such as the formation of its platform, the conduct of its campaigns, or the selection of campaign strategy—to the committees created by statute. Instead, the state committee chairman, statutory committees, or relevant precinct committeemen (1) choose replacement candidates for those candidates who die or resign before an election, A.R.S. § 16–343 (1996), (2) receive funds contributed to the party by citizens using the state income tax form, A.R.S. § 16–807, (3) receive a free copy of voter registration data, A.R.S. § 16–168(C), and (4) appoint candidates to serve as the party's presidential electors. A.R.S. § 16–344 (Supp.2000). We therefore conclude that the statutory requirements do not unduly or impermissibly burden Appellees' rights, but rather serve the state's important regulatory interests.

¶ 25 The first and fourth of these functions relate directly to the voting process, for which the state is responsible. *See Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (noting that states legitimately play a major role in structuring and monitoring the election process); *see also Tashjian*, 479 U.S. at 217, 107 S.Ct. at 550. The second and third are ministerial functions by which political parties receive money or information to which they are entitled by state law. None of these functions implicates the internal workings of political parties, and receiving state funds and voter data does not strike us as particularly burdensome.

¶ 26 Appellees claim that A.R.S. §§ 16–824 to –828 restrict who may serve as legislative district, county, and state party officers. This is true, however, only in the sense that any election precludes others from holding an office for which another has been chosen. The party is restricted, as are all parties in all elections, by who can win the seat. The statutes do not prohibit any qualified candidate from running for any of these positions. They merely require that the candidates qualify themselves for county and state offices by being selected as precinct commit-

teemen. *See* A.R.S. § 16–821.[6] And as the Supreme Court has observed, that states may require the use of primaries is "too plain for argument." *Jones*, 530 U.S. at 572, 120 S.Ct. at 2407 (quoting *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974)).

¶ 27 The statutes also dictate where the state committee meeting must be held, A.R.S. § 16–826(A) (in state capitol), and generally when it must be held. *Id.* ("committee shall meet … no earlier than ten days after the last county meeting of the party and … no later than the fourth Saturday in January following a general election"). Although Appellees have challenged section 16–826 generally, they have not argued that these particular restrictions are burdensome or unreasonable. Finding the record silent on this point and having been shown no burden that this statute imposes on constitutionally protected rights, we presume that these requirements pass constitutional muster. *See Kotterman*, 193 Ariz. at 284, ¶ 31, 972 P.2d at 617.

¶ 28 In reviewing the challenged statutes, we find no provisions that prevent political parties from forming other committees and choosing other officers to manage internal party matters or from holding conventions or other meetings to determine party policy and platform. In deciding *Marchioro*, the Supreme Court relied on the similar fact that the Washington statutory scheme did not prohibit the political party's convention from creating an entirely new committee to perform political functions it had assigned to the statutorily created state committee. 442 U.S. at 199, 99 S.Ct. at 2248.

¶ 29 Finally, and significantly, Appellees claim that the requirement that they elect precinct committeemen pursuant to statute violates a Libertarian Party bylaw that prohibits use of taxpayer-funded elections to elect precinct committeemen and therefore it devitalizes the party's political message. We have two responses. First, the provisions for selecting precinct committeemen are contained in A.R.S. § 16–821, which Appellees have chosen not to challenge. Therefore,

this issue is not properly before us. Second, Appellees' brief contains an avowal that the party has changed its bylaws to conform to state law, thus allowing the party to participate in taxpayer-funded elections to elect precinct committeemen. The requirements for electing precinct committeemen therefore no longer violate Libertarian Party bylaws.

¶ 30 In summary, unlike the statutes in *Eu*, Arizona's statutes do not limit terms of office or the persons who may serve in party positions nor do they require that the party leadership alternate between or among leaders from particular parts of the state. The challenged statutes do not restrict the ability of political parties and their members to endorse, support, or vote for particular persons; they do not limit a party's access to the ballot; they do not determine a party's policy; and, while they do affect a party's structure for some purposes, they do not necessarily regulate a party's internal governance. *See Timmons*, 520 U.S. at 363, 117 S.Ct. at 1372. We therefore affirm the trial court's ruling that A.R.S. §§ 16–824 to –828 are constitutional.

### C. Prospective Application of the Law

¶ 31 The statutes at issue were passed in 1979.[7] The Libertarian Party acquired continued representation status following the 1994 election. We conclude that by 1997, the date of the earliest party meeting contested in this case, the party was well aware of the existing law and had the obligation to follow it. We therefore reverse that portion of the trial court's opinion holding that Appellees needed to comply with the law only prospectively.

### CONCLUSION

¶ 32 In light of the foregoing, we conclude that A.R.S. §§ 16–824 to –828 do not impermissibly burden the First Amendment rights of political parties in Arizona. We therefore affirm the judgment upholding the constitu-

---

6. Section 16–821 does contain a geographical distribution requirement. Again, however, we note that Appellees have not challenged the constitutionality of section 16–821.

7. That section 16–825.01 was added in 1986 does not change our analysis.

tionality of A.R.S. §§ 16–824 to –828. We reverse that portion of the judgment suggesting that any party could, with impunity, ignore existing and presumptively constitutional Arizona law.

CONCURRING: JEFFERSON L. LANKFORD, Judge, E.G. NOYES, JR., Judge.