IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ARIZONA LIBERTARIAN PARTY, INC., GEORGE SQUYRES, JOHN SIEGEL, LYLE SCHNITZLER, and STEPHEN NEKOLEK, | ) ) ) ) ) | 2 CA-CV 2002-0174 DEPARTMENT A |
| | ) | O P I N I O N |
| Plaintiffs/Appellees, | ) ) | |
| v. | ) ) | |
| BOARD OF SUPERVISORS OF COCHISE COUNTY and BOARD OF SUPERVISORS OF COCONINO COUNTY, | ) ) ) ) | |
| Defendants/Appellants. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200200287

Honorable Stephen M. Desens, Judge

REVERSED AND REMANDED

---

David T. Hardy                                                          Tucson
                                           Attorney for Plaintiffs/Appellants

Chris M. Roll, Cochise County Attorney
  By John A. MacKinnon                                              Bisbee
                                        Attorneys for Defendant/Appellee
                              Board of Supervisors of Cochise County

Terence C. Hance, Coconino County Attorney
  By Jean E. Wilcox

                                                                   Flagstaff
                                        Attorneys for Defendant/Appellee
                            Board of Supervisors of Coconino County

---

H O W A R D, Judge.

¶1         Appellant Arizona Libertarian Party, Inc.,[1] (ALP) is entitled "to representation as a political party on the official ballot for state officers." A.R.S. § 16-804(A). But ALP is not entitled to continued representation on ballots for election of county officers in either Cochise or Coconino county. ALP requested that appellees the Cochise County Board of Supervisors and the Coconino County Board of Supervisors (the counties) list certain members of ALP as candidates for precinct committeemen on the 2002 primary election ballot.[2] The counties refused. ALP then filed this special action, requesting that the counties be required to list its candidates. The superior court accepted jurisdiction but entered judgment denying relief. This appeal followed. Because ALP is entitled to continued representation on the ballot for state officers, and because the governing statutes require political parties with continued state representation to elect their precinct committeemen in the state primary election, we reverse the judgment and remand the case.

¶2         When a judgment entered in a special action proceeding initiated in superior court is appealed to this court, we first determine whether the superior court accepted jurisdiction and decided the merits of the claim; if so, we then review the superior court's decision on those merits to determine whether it abused its discretion in granting or denying relief. *Files v. Bernal*, 200 Ariz. 64, ¶2, 22 P.3d 57, ¶2 (App. 2001). But, when "the superior court's ruling hinged on pure issues of law, we review its legal conclusions de novo." *Norgord v. State ex rel. Berning*, 201 Ariz. 228, ¶4, 33 P.3d 1166, ¶4 (App. 2001).

_____

[1]Individual Libertarian Party members George Squyres, Stephen Nekolek, John Siegel, and Lyle Schnitzler were also plaintiffs below and are appellants here.

[2]We use the gender-specific terminology of the statutes.

¶3        Both sides agree that the claims as to the 2002 election are moot, but ALP requests that we decide this matter because the issue is of statewide interest; is likely to recur in future elections; and, due to the short time frame allowed for applying for ballot listing, could evade appellate review. We agree and, in our discretion, decide the legal issue presented. *See State v. Roscoe*, 184 Ariz. 484, 502, 910 P.2d 635, 653 (1996). Although both sides frame the issue slightly differently, the basic issue before us is whether the legislature, in enacting A.R.S. § 16-821, intended that parties such as ALP, which are entitled to continued state representation but not continued county representation in the counties, have their candidates for county precinct committeemen listed on the primary ballot.[3]

¶4        "Our primary goal in interpreting statutes is to discern and give effect to legislative intent." *Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8 (App. 2001). "We first consider the language of the statute and, if it is unclear, turn to other factors, including 'the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Norgord*, 201 Ariz. 228, ¶7, 33 P.3d 1166, ¶7, *quoting Hobson*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8.

¶5        Section 16-821(A) provides for the election of precinct committeemen for parties entitled to continued representation:

> At the primary election the members of a political party entitled to representation pursuant to § 16-804 residing in each precinct shall choose one of their number as a county precinct committeeman, and the members shall choose one additional

---

[3]At oral argument, both sides agreed that ALP is entitled to county continued representation in Maricopa and Pima Counties only. The counties also acknowledged that Yuma and Mohave Counties, in which ALP does not have continued status, regularly list ALP precinct committeemen candidates on their primary ballots.

precinct committeeman for each one hundred twenty-five voters . . . . The whole number of precinct committeemen of a political party shall constitute the county committee of the party.

Section 16-804, which specifies when a party is entitled to continued representation, states in part:

A. A political organization that at the last preceding general election cast for governor or presidential electors or for county attorney or for mayor, whichever applies, not less than five per cent of the total votes cast for governor or presidential electors, in the state or in such county, city or town, is entitled to representation as a political party on the official ballot for state officers or for officers of such county or local subdivision.

B. In lieu of subsection A, a political organization is entitled to continued representation as a political party on the official ballot for state, county, city or town officers if, on November 1 of the year immediately preceding the year in which the general election for state or county officers and for city or town officers one hundred fifty-five days immediately preceding the primary election in such jurisdiction, such party has registered electors in the party equal to at least two-thirds of one per cent of the total registered electors in such jurisdiction.

¶6 Both sides agree that § 16-804 creates three levels of representation: state, county, and local or municipal. *But see Van Arsdell v. Shumway*, 165 Ariz. 289, 293, 798 P.2d 1298, 1302 (1990) (recognizing "county, district and precinct" and "state" as the "two levels" of government offices in Arizona). Section 16-821 does not differentiate between parties entitled to continued state representation and parties entitled to continued county or local representation under § 16-804. ALP notes that it is "entitled to representation pursuant to § 16-804" and asserts that, under the plain language of § 16-821, therefore, it is entitled and required to elect its precinct committeemen pursuant to that statute. As the counties point out, however, parties entitled to representation in a single municipality would also be "entitled to representation under § 16-804." Therefore, looking only at the plain language of the statute, such a party would be allowed to use

4

the procedure in § 16-821 for electing precinct committeemen statewide. Neither side seriously contends the legislature intended that parties entitled to continued local representation be allowed to elect its precinct committeemen statewide through § 16-821, but such an interpretation reveals an inherent ambiguity within the statute. We therefore turn to the context, subject matter, historical background, effects, consequences, spirit, and purpose of § 16-821 to determine its meaning. *See Norgord.*

¶7        Examining the context of the statute, both sides attempt to clarify the ambiguity by analyzing whether a precinct committeeman holds a state or county office for purposes of § 16-804(A). The counties claim that a precinct committeeman holds a county office and that, therefore, only political parties entitled to continued representation on the county ballot should have candidates for precinct committeemen listed on the ballot. ALP, on the other hand, counters that a precinct committeeman holds a state office and that, therefore, political parties entitled to continued state representation should be listed on the ballot.

¶8        Both sides point out, however, that a precinct committeeman is neither a state nor a county officer in the usual sense. A precinct committeeman serves the interests of his or her political party and is not a public officer at all. *See* A.R.S. § 16-822(C). Accordingly, the office of precinct committeeman does not fit within the category of "state officer" or "county officer" under § 16-804, and this analysis fails to resolve the issue presented here. We must therefore further examine the context and purpose of § 16-821. *See Norgord.*

¶9        ALP argues that, construing the Arizona election system as a whole, the intent of the legislature was that the precinct committeemen of a party entitled to continued state representation be elected pursuant to a statewide system. It asserts that, because the precinct

5

committeemen elect the state committee members, who then act on behalf of its members on statewide issues, it should be allowed to utilize the statewide system in each county.

¶10 As ALP notes, the party state committee is formed from the party county committees:

> The state committee of each party shall consist, in addition to the chairman of the several county committees, of one member of the county committee for every three members of the county committee elected pursuant to § 16-821. The state committeemen shall be chosen at the first meeting of the county committee from the committee's elected membership.

A.R.S. § 16-825. It makes sense that a political party entitled to continued state representation for the election of state officers would be allowed to have a state committee drawn from the entire state. This statute requires that the party have one member of the state committee for every three county committee members "elected pursuant to § 16-821." Thus, the legislature has created a structure for the state committee that requires that county committee members be elected pursuant to § 16-821. The county committee is composed of precinct committeemen. § 16-821(A). Therefore, the precinct committeemen must be elected pursuant to § 16-821 in order for this system to function cohesively. Section 16-825 then provides a strong indication that the legislature intended that the precinct committeemen of a party entitled to continued state representation be elected pursuant to § 16-821.

¶11 At oral argument, the counties argued that § 16-825 restricts the membership of ALP's state committee to precinct committeemen from counties in which ALP has continuing status, namely Maricopa and Pima. Such an interpretation, however, conflicts with A.R.S. § 16-824(A), which states that "[t]he chairman of the county committee shall be ex officio a member

6

of the state committee." The counties' interpretation also conflicts with the very notion of a *state* committee, in that ALP members in thirteen counties would have no representation.

¶12        Section 16-823, A.R.S., further supports ALP's claim that a party entitled to continued state representation is entitled to elect its precinct committeemen in each county pursuant to § 16-821. Section 16-823 provides that a political party entitled to representation on the state level is allowed to form a legislative district committee, which must be composed of precinct committeemen elected pursuant to § 16-821. Section 16-823(A) states as follows: "A political party entitled, pursuant to § 16-801 or 16-804, to representation on the ballot may establish a district party committee for any legislative district as prescribed by law." Section 16-801, A.R.S., provides that a new party may become eligible for representation on primary and general ballots for state offices by filing a petition with the secretary of state. Section 16-804 provides for continuing status for statewide, county, and local ballots. Notably absent from § 16-823 is any mention of A.R.S. § 16-802, which provides a procedure for a new party to be entitled to representation on county and local ballots. Consequently, the legislature apparently intended that parties entitled to appear on the ballot for state offices have the ability to form legislative district committees.

¶13        Section 16-823(B) then states that "[a] district party committee established pursuant to subsection A of this section shall consist of the precinct committeemen residing in the district and elected pursuant to § 16-821." This section establishes two requirements for the precinct committeemen who will be organized into a legislative district committee: they must reside in the district and they must be elected pursuant to § 16-821.

7

¶14        A legislative district may include portions of more than one county, and ALP may be entitled to continued county representation in less than all of those counties. For example, current legislative district 30 encompasses part of Pima County, in which ALP is entitled to continued county representation, and part of Cochise County, in which ALP is not entitled to continued county representation. If ALP wishes to form a district committee, it is required to use the process of § 16-823 to form a district committee, but, under the counties' interpretation, many of its precinct committeemen who reside in the district, thereby fulfilling the residence requirement, would be unable to participate unless it is allowed to use the election process of § 16-821 throughout the state.[4] An ALP precinct committeeman on the Pima County side of the line would be a member of the district committee, but an ALP precinct committeeman on the Cochise County side of the line could not participate because the committeeman was not elected pursuant to § 16-821. This cannot be the legislative intent. By limiting those precinct committeemen eligible for membership on the district committee to those elected pursuant to § 16-821, the legislature displayed an intent to allow parties entitled to representation on the state level to elect precinct committeemen statewide pursuant to § 16-821.

¶15        At oral argument, the counties admitted that, if ALP cannot elect its precinct committeemen pursuant to § 16-821 statewide, § 16-823 creates an unworkable system. They contended, however, that because § 16-823 uses the permissive term in stating that a party "may" form a legislative district committee, the legislature intended that parties who are not entitled to

_____

        [4]If the counties are correct that ALP may only elect its precinct committeemen pursuant to § 16-821 in Maricopa and Pima Counties, then it would be required to appoint its precinct committeemen and other officers in other counties pursuant to some other method, such as caucus or convention. *See, e.g.*, *Arizona Libertarian Party v. Schmerl*, 200 Ariz. 486, ¶3, 28 P.3d 948, ¶3 (App. 2001) (noting one faction of ALP selected officers at annual convention).

continued county representation in all counties included in the district not be allowed to form a district committee. Had that been the legislative intent, however, we believe the legislature would have spoken much more clearly on the subject and not depended on the use of the word "may" to carry such a substantive and covert meaning.

¶16    The counties further contend the legislative history demonstrates the legislature intended that only parties entitled to continued county representation are entitled to have their candidates for precinct committeemen appear on the primary ballot. Prior to 1984, § 16-821 stated in pertinent part:

> At the primary election the members of a political party residing in each precinct in which any number of votes were cast at the last preceding general election for the nominee of such party for governor, or for presidential electors for the nominee of such party for president, in presidential election years, shall choose one of their number as a county precinct committeeman . . . .

1979 Ariz. Sess. Laws, ch. 209, § 3. The counties submit that, by adding the requirement that a party be entitled to continued representation under § 16-804 and deleting the provision allowing the election of a precinct committeeman in any precinct in which any votes were cast, the legislature expressed its desire that the party have a more significant presence at the county level before its candidates for precinct committeeman be listed on the ballot. But the legislature instead could have intended to harmonize the system of continued representation under § 16-804, and the present statute contains no indication that continued state representation is insufficient to support placing a party's candidates for precinct committeeman on the ballot.

¶17    At oral argument, the counties argued, for the first time, that legislative intent may be gleaned from § 16-804(D), which states: "Each county recorder shall determine the political parties qualified for the county ballot pursuant to this section." The counties contend that the

9

legislature could not have intended a county recorder to determine the status of a party at the state level. We will not consider arguments raised for the first time at oral argument. *Dillon v. Zeneca Corp.*, 202 Ariz. 167, n.6, 42 P.3d 598, n.6 (App. 2002). Moreover, the counties conceded that a county recorder or elections officer may well have duties with regard to state legislative races and others that cross county lines. *See, e.g.*, A.R.S. § 16-351. Furthermore, determining the parties entitled to continued state representation is not difficult. Apparently, at least two counties in which ALP is not entitled to continued county representation currently are able to do so. Finally, although this may be some indication of legislative intent, it is insufficient to counterbalance the import of § 16-823 and § 16-825.

¶18    Our conclusion is also consistent with *Arizona Libertarian Party v. Schmerl*, 200 Ariz. 483, ¶11, 28 P.3d 948, ¶11 (App. 2001), in which the court stated that "[a] common-sense and contextualized reading of the statutes before us [A.R.S. §§ 16-821 and 16-824 through 16-828] imposes upon a political party entitled to continued representation the obligation to select its representatives in a certain manner." The *Schmerl* court included ALP as "a party entitled to continued representation" pursuant to § 16-804. *See id.* at ¶2. And although the *Schmerl* court was not faced with the precise question posed in this case, the opinion demonstrates that, as a whole, the statutes in question here "obligat[e]" a party entitled to representation on the ballot for state officers to elect its precinct committeemen "in a certain manner," namely that prescribed in § 16-821. It also demonstrates the difficulties that can arise from a bifurcated system.

¶19    The counties point out that this result places an additional burden on them. But ALP counters that because the counties are already required to place ALP's candidates for state offices on the ballot, placing its candidates for precinct committeemen on the ballot is a minimal

10

burden. Because we have determined that the legislature intended the counties to bear whatever burden is imposed, we suggest that the counties seek legislative relief to correct any undue burden the legislature may have imposed.

¶20        We thus hold that, because ALP is entitled to continued state representation, it is entitled to and is required to elect its precinct committeemen in the counties through the process specified in § 16-821. Our holding reaches only parties entitled to representation on the state level. We accordingly reverse the judgment of the trial court and remand the case for further proceedings.

 

_____

JOSEPH W. HOWARD, Judge

CONCURRING:

_____

J. WILLIAM BRAMMER, JR., Presiding Judge

_____

M. JAN FLÓREZ, Judge

11