[Civil No. 3626.   Filed December 16, 1935.]

[52 Pac. (2d) 1155.]

EDWARD READING, JOE RICE and WM. A. BAKER, Composing the Civil Service Board of the City of Phoenix, and V. R. QUINTEL, Secretary of the Civil Service Board of the City of Phoenix, Appellants, v. E. J. MAXWELL, Appellee.

Mr. Herman Lewkowitz and Mr. Hess Seaman, for Appellants.

Messrs. Struckmeyer & Jennings, for Appellee.

ROSS, J.—The plaintiff, E. J. Maxwell, seeks by *mandamus* to compel the defendants Edward Reading, Joe Rice and Wm. A. Baker, composing the civil service board of the city of Phoenix, and V. R. Quintel, secretary of such board, to certify that his "status is that of clerk in the (city) water department" and to determine his seniority. The parties stipulated the facts and, upon such facts and the pleadings, the court rendered judgment for plaintiff making the alternative writ peremptory. The defendants have appealed from the judgment for the reason, as they assert, that it is not supported by the law or the facts.

The stipulated facts are, in substance, as follows: On March 1, 1933, plaintiff was given temporary employment as is shown by the following writing:

"Report of Emergency Appointment.
"Civil Service Commission:
"Date *March 5, 1933.*
"Owing to the emergency stated in detail below *E. J. Maxwell*—2326 N. *10th Street*, was appointed by me on *March 1, 1933* to the position of *Clerk* in the Department of *Water* to perform the following work: —— at pay of $160.00 per Mo. Details of Emergency: *Checking Services to correct records Temporary employment.*"

This notice of appointment was made on a printed form and we have italicized the written part thereof. Under such appointment, plaintiff worked for the city in the capacity of clerk in the water department until May 15, 1933, and thereafter as a draftsman in the water department, and did some checking of meters in that department until July 16, 1934, when at his request, he was transferred from the water department to the position of draftsman in the street railway department, with the approval of the city manager, city engineer and civil service board.

During plaintiff's employment as a draftsman in the water department, he requested two leaves of absence from his regular duties, which were approved by the city engineer and the secretary of the civil service board.

The position of draftsman in the city water department, as also in the street railway department, falls within the classified service and no one is eligible thereto except upon passing the competitive examination.

On August 10, 1934, while plaintiff was working as a draftsman in the street railway department, the city commission of Phoenix abolished that position.

Thereafter plaintiff requested a hearing before the civil service board to have determined his status in the classified service. A hearing was held and the decision of the board was that the plaintiff's status was:

"that of temporary draftsman in the Water Department; his status being temporary for the reason that this is a competitive classification and no permanent appointment can be made (since May 1, 1933) without examination."

Whether the action of the civil service board, in refusing to give plaintiff the classified status of a clerk in the city's water department, was correct is the question to be decided.

In May, 1924, civil service was adopted by the city of Phoenix. The charter of the city at that time lodged in the city manager the power to appoint and discharge all the city officers (with some exceptions) and all employees. Ordinance No. 715, passed by the city commission and approved at an election by the voters of the city in 1924, created the civil service commission and gave it power to classify the city's civil service, to hold competitive examinations, and certify eligible lists from which appointments were to be made. It also provided for the discharge of employees, hearings, etc.

On April 9, 1929, in the case of *Paddock* v. *Brisbois*, 35 Ariz. 214, 276 Pac. 325, we held that since the power to employ and discharge the civil service employees of the city was by the charter lodged in the city manager, the right could not be taken from him by ordinance, but only by amending the charter. No steps were taken towards amending the charter or Ordinance 715 until on April 3, 1933, when an amendment to the charter was submitted to the voters and by them approved authorizing the city to provide

for a civil service board and to delegate to this board "the power to regulate and control appointments, demotions, discharges and reinstatements of any or all officers and employees of the city except," etc. Thereafter Ordinance 715 was amended, effective May 1, 1933, to conform with the amended charter. In the interim, from April 9, 1929, when the decision in the Brisbois case, *supra*, was rendered, to May 1, 1933, the city continued to operate under the civil service as established in 1924 and plaintiff received his appointment to temporary employment under the provisions of Ordinance 715 as originally passed. Rule 8, adopted in 1924 by the civil service commission, reads as follows:

"Provisional and Temporary Appointments.

"1. Provisional and temporary appointments shall be made only as provided in section three, subsection eight, of Ordinance number 715, which provides: Sub-Section Eight. 'For temporary employment without examination, with the consent of the Commission, in cases of emergency and pending appointments from an eligible list. But no such temporary employment shall continue longer than sixty days nor shall successive temporary employment be allowed.'

"2. As soon as an eligible register is secured for a position filled by provisional appointment under the foregoing section, the Commission shall certify to the appointing officer in the usual manner the name or names of the person or persons standing highest on the register and the appointing officer shall make the appointment in the manner hereinbefore provided. As soon as such appointment has been made, the provisional appointment shall terminate."

The notice advising the civil service commission of plaintiff's appointment conforms with this rule. The city manager, although at that time vested with the full power to hire and discharge employees, was deferring to the rules of the civil service and making appointments thereunder.

But plaintiff contends his appointment was to the position of clerk in the city water department and that he was occupying such position on May 1, 1933, when Ordinance 715 was amended, and that by virtue of section 6 thereof he was given the status of clerk in such department. Section 6 reads:

"All persons in the city service holding positions in the classified service as established by this ordinance at the time it takes effect shall retain their positions until discharged, reduced, promoted or transferred in accordance with the provisions of this ordinance, and rules and regulations of the Civil Service Board governing same."

■■ If on May 1st plaintiff was holding a position in the classified service of the city, under such section it will be admitted he is entitled to retain such position. The notice advising of his employment, as before stated, was on a blank form and the written part, and not the printed part thereof, when there is a conflict between them, controls. The written part is to the effect that the appointment is an emergent one, to wit, "Checking services to correct records Temporary employment," and the whole instrument is evidence conclusive that the appointment was one under rule 8 above quoted. Under such rule, the employment could not continue longer than sixty days, nor could successive temporary employment be allowed. If this rule means anything or has any force, plaintiff's employment ceased at the end of sixty days from the time of his appointment and thereafter he was on the pay roll without any authority whatever. He was an employee at sufferance only.

We think it is a fair inference from the stipulated facts that plaintiff completed his "checking services to correct records" on the 15th day of May, and that thereafter he was not engaged in clerical work at all.

In other words, he had completed the work for which he was employed and his contract was terminated.

■ Granting that the city manager had the absolute power to make plaintiff's appointment permanent, it is clear that he did not intend such appointment to be permanent. Temporary appointments do not ripen into permanent appointments. *Darling* v. *Maguire,* 70 Misc. 597, 129 N. Y. Supp. 385.

In *State* v. *City of Seattle,* 134 Wash. 360, 235 Pac. 968, 970, employees of the city of Seattle made the same contention, that is, that, while they may have been given temporary employment, such employment, by virtue of an amendment of the civil service regulations, became permanent. The court said:

"Such construction would evade the very objects of the civil service regulations. If they remained on the employment roll after the 60-day period had expired, they simply remained by sufferance, and to construe them as permanent employees would be to violate the express provisions of the charter and disregard the Civil Service Law. Their employment after that time if not considered as re-employment by the city during the continuance of the emergency existing, must be considered as unlawful, and they would have no rights whatever as against any certified eligibles."

■ That there is a difference between *temporary employment* and a *position,* as used in Ordinance 715 and the rules thereunder, seems clear. In rule 8, *supra, temporary employment* and a *position* are treated of in separate paragraphs. A temporary employment can never become permanent or continuous and only a position can be permanently filled from the eligible list. Those protected by section 6, *supra,* are persons occupying *positions* on May 1, 1933, and not mere temporary employees engaged to do an emergency job.

Plaintiff's transfer to the classified position of draftsman, first in the water department and next in the street railway department, was in violation of the civil service rules and illegal because he had not passed the competitive examination for such positions, or for any other position in the classified service of the city.

The judgment is reversed and the cause remanded with directions that the peremptory writ of *mandamus* be quashed and the complaint dismissed.

LOCKWOOD, C. J., and McALISTER, J., concur.