[Civil No. 4109. Filed November 20, 1939.]

[95 Pac. (2d) 987.]

CITY OF PHOENIX, a Municipal Corporation, Appellant, v. WARREN SANNER, Appellee.

Mr. Hess Seaman, City Attorney, Mr. William C. Fields, his Assistant, for Appellant.

Mr. George M. Sterling, for Appellee.

LOCKWOOD, J.—Warren Sanner, hereinafter called plaintiff, brought suit against the City of Phoenix, a municipal corporation, hereinafter called defendant, to recover certain wages which he alleged were due him for the time he had been illegally discharged from the position of inspector in the street railway department of the city.

The allegations set up by the complaint were, in substance, that plaintiff at all times mentioned in his complaint was a duly certified railway inspector under the civil service rules of the City of Phoenix, and that notwithstanding his record entitled him to perform the duties of such inspector and receive the proper wages therefor, the defendant had refused to permit him to perform them, although he was at all times ready, willing and able to do so.

The city answered, alleging that during the time for which plaintiff sought to recover wages he was lawfully laid off and dismissed from duty, and further that he never at any time was a permanent civil service employee of the defendant, but was an employee by sufferance only, under a temporary emergency appointment, and, therefore, subject to discharge at will.

The case came to trial before the court sitting without a jury, and judgment was rendered in favor of plaintiff, whereupon this appeal was taken.

The real issue is stated by the defendant as follows:

"Did the plaintiff have a permanent civil service status during the period alleged in his complaint, or was he merely an employee at sufferance subject to dismissal or layoff at the will of defendant. If he was an employee at sufferance only he was not entitled to

judgment for salary accrued during the period alleged in his complaint.''

and plaintiff accepted this issue with the corollary that if he did have a permanent civil service status during the period set up in his complaint he was entitled to the judgment which was rendered. We consider the case on the issues thus settled.

The issue for our determination then is, what was the civil service status of the plaintiff during the period in question. The record shows that plaintiff was originally appointed in 1932. He was dismissed in 1934, but reinstated by order of the civil service board. He was again laid off from service on August 1, 1935. He protested before the civil service board against this layoff and was ordered reinstated, which was done October 30th. He failed to report for duty and on December 11th he was again dismissed. He protested against this dismissal, and on June 5, 1936, the civil service board transmitted the following message to the city manager:

''Dear Mr. Stallcup:

''I have checked the Civil Service record of Warren Sanner and attach copy hereto for your information.

''Mr. Sanner has been employed by the City of Phoenix since July 1, 1932. On this date he was appointed under an Emergency Appointment. Resolution of the Civil Service Commission provides that any appointments irrespective of class, where the employee who has completed his six months probationary period prior to May 1, 1933, will be certified. This is in line with the opinions and rulings of various Civil Service Commissions for the past ten years; therefore, Warren Sanner is to be considered a certified employee of the City of Phoenix, as Street Railway Inspector on the Street Railway System.''

This is in effect a finding that plaintiff was a certified employee of the defendant under the protection of the civil service ordinance and regulations issued in

pursuance thereof, and it follows, as a matter of law, that he could not be dismissed except in accordance with such rules and regulations. It is tacitly admitted his dismissal did not conform with them.

No direct attempt was ever made by the defendant to question or review this finding of the board, and on June 9th plaintiff presented the letter just quoted to the street railway department, and was returned to duty on that date. On June 22d he presented a claim to the city for salary for the time which he alleged he had been illegally laid off. The city refused to pay it, and this suit was filed on July 30th.

At the trial of the case the original written order appointing plaintiff to his position was put in evidence and also, over the objection of defendant, an alleged contemporaneous conversation in the presence of the then city manager, which would tend to show that it was meant that plaintiff's position should be a permanent, and not merely a temporary, one.

Defendant argues that the original appointment shows that plaintiff was merely a temporary employee, and that under the civil service regulations and the ruling of this court in the case of *Reading* v. *Maxwell,* 46 Ariz. 500, 52 Pac. (2d) 1155, after sixty days had elapsed he was merely an employee by sufferance, not protected by civil service rules, and subject to discharge at any time for any reason.

Plaintiff argues that the record shows his appointment by the city manager in 1932 was, in reality, a permanent one, and that under our decisions in *Reading* v. *Maxwell, supra,* and *Paddock* v. *Brisbois,* 35 Ariz. 214, 276 Pac. 325, and the provisions of section 1095 of Ordinance No. 715 of the City of Phoenix, as approved by the people April 4, 1933, he was blanketed into the civil service on May 1, 1933, and was protected from arbitrary dismissal by its regulations from that time on.

 We think we need consider but one thing, and that is whether the question of his status is subject to review by the courts in this proceeding. It is the universal rule that a judgment duly rendered, which has become final, is not subject to collateral attack, but may be questioned only in a direct proceeding of a proper nature. This rule against the collateral impeachment of judicial decisions applies to the determinations of different officers and boards of officers who, although they do not strictly speaking constitute a court, are called upon to act judicially in matters of administration. *City of Chicago* v. *Campbell*, 118 Ill. App. 129. This was a proceeding before the police trial board under the civil service law of the city of Chicago. The court said:

" . . . The board is provided by law and is clothed with power to pass upon the case of appellee and other cases of like character; and its judgments, when approved by the Civil Service Commission, rest upon the same basis and are entitled to the same respect as are the judgments of other legal tribunals. This principle is commented upon in 17 Am. & Eng. Ency. 1056 (2nd Ed.), in the following language: 'The general rule has frequently been applied to special tribunals through which the authority of the State is exercised. Whenever any person is given authority to hear and determine any question, such determination is in effect a judgment having all the properties of a judgment pronounced in a legally created court of limited jurisdiction. . . . ' "

In *Thompson* v. *Board of Education*, 57 N. J. L. 628, 31 Atl. 168, 169, the court said:

". . . For present purposes it is entirely unimportant whether the decision of the state superintendent was warranted by the facts before him or whether it was grossly erroneous, inasmuch as he had indubitable jurisdiction over the parties and the subject-matter. There is no distinction in point of conclusiveness between the decisions of a special tribunal such as

this and the judgments of a court of record. The sole difference is in the presumption of jurisdiction that inheres in general courts alone. If the right of the special tribunal to pass on the matter in controversy between the parties be established, its determinations are conclusive upon the parties until reversed by some appellate court. As a general rule, whenever any person is given authority to hear and determine any question, such determination is, in effect, a judgment having all the properties of a judgment pronounced in a legally created court of limited jurisdiction acting within the bounds of its authority. . . . ''

In *Campbell* v. *Youngson,* 80 Neb. 322, 114 N. W. 415, 416, the court's language was:

''Generally, where the determination of a matter has been referred to the consideration of a particular administrative board or officer, and no appeal is provided for from such decision, its order or determination is final, and will not be subject to collateral attack. . . . ''

In the case of *Ex parte Beck,* D. C., 245 Fed. 967, 969, referring to the recision of a selective draft district board, the court says:

''Inquiring briefly into these boards, they are administrative bodies created by the selective draft law, with powers, duties, and procedure conferred by the law and rules not inconsistent with the law and prescribed by the President. They have many familiar analogies, viz. land department officials, immigration boards and inspectors, tax and customs boards, special and military commissions, courts-martial, and the like.

''Such bodies and persons are special tribunals vested by law with authority and duty to hear and determine such matters as the law directs. They are but *quasi* judicial, and of inferior and limited jurisdiction. But within this jurisdiction, if they proceed as the law directs, their decisions with some exceptions not material here, if unaffected by fraud or mistake, are conclusive upon the courts and wherever collaterally questioned. . . . ''

In the present case the civil service board of the City of Phoenix was created under the charter powers for the express purpose of determining just such questions as are at issue in the present case. It had jurisdiction to determine the status of plaintiff in regard to the civil service laws, rules and regulations. It did determine his status at three separate times, after the present ordinance went into effect, and its judgments were regular upon the face of the record made by it. We think under such circumstances the only way that the finding of the board could be attacked was by a direct proceeding, and that the correctness of its judgment as to the status of plaintiff could not be questioned in a collateral one. That the defense in the present case is a collateral attack upon the judgment of the board is obvious.

The judgment of the superior court is, therefore, affirmed.

ROSS, C. J., and McALISTER, J., concur.