[Civil No. 4543. Filed July 7, 1944.]

[150 Pac. (2d) 93.]

CITY OF PHOENIX, a Municipal Corporation, Appellant, v. CHARLES H. WRIGHT, Appellee.

Mr. Richard Minne, City Attorney, and Mr. George D. Locke, of Counsel, for Appellant.

Mr. James E. Nelson, for Appellee.

McALISTER, C. J.—On January 6, 1942, Charles H. Wright filed his complaint against the City of Phoenix alleging that he had been employed by the city as assistant chief of police, at a salary of $250 per month; that he had performed the duties of such office; and that defendant had failed to pay him for the period from December 16, 1941, to December 31, 1941, and asked judgment for the sum of $125.

The city answered on the 26th day of January, 1942, and denied that the plaintiff was the duly appointed, acting and qualified assistant chief of police of the City of Phoenix; admitted that it had failed and refused to pay the salary sued for, and alleged that the plaintiff was a member of the Phoenix police force by virtue of a decree of the superior court of Maricopa County rendered on the 14th day of November, 1935. The city further alleged that the position of assistant chief of police was one in the classified service and that plaintiff had not taken the examination for said position as required by the rules governing civil service; that the city was ready, willing and able to pay the plaintiff the monthly salary to which he was entitled as a patrolman.

On April 4, 1942, the plaintiff filed a supplemental complaint in which, after setting up substantially the same allegations contained in the original complaint, he asked for judgment for salary from December 16, 1941, to January 31, 1942, at the rate of $250 per month, and from February 1, 1942, to March 31, 1942, at the rate of $263 per month, total $901, the salary having been duly and regularly increased on February 1, 1942, from $250 to $263 per month.

The evidence discloses that on the 1st day of April, 1933, the said Charles H. Wright was duly appointed assistant chief of police and day captain in the police department of the City of Phoenix and that from that time continuously until the 1st day of June, 1934, he performed the duties pertaining to that office and regularly received a salary therefor; that on the first day of May, 1935, the city commission of the City of Phoenix passed an ordinance abolishing the office of assistant chief of police.

The record further shows that on December 9, 1940, the City of Phoenix enacted Ordinance No. 3205, re-establishing the position of assistant chief of police. The plaintiff, Charles H. Wright, had performed the duties of the office of acting chief and later chief of police of the city, but he was dismissed from the position of chief of police on December 5, 1941. Charges had been filed with the civil service commission against him and when he appeared before the civil service commission in response to the charges, the city manager withdrew them. He was exonerated from the charges and reinstated to his former position of assistant chief of police with full salary from December 5, 1941.

It is admitted that he performed all of the duties of the office from December 5, 1941, until March 31, 1942; that he was issued a regular police card by which he was designated as "Assistant Chief of Police" and was paid the salary of assistant chief from December 5 to December 15, 1941. During this time his name appeared on each semi-monthly payroll of the City of Phoenix which had been checked, in every instance, for names, rates and classifications by the civil service board and had been certified and approved by that board.

Despite the certification of the board, the city manager refused to allow payment of plaintiff's salary.

He assigned as the sole reason for this act a threatened lawsuit by a citizen of Phoenix, W. B. Williamson, who admittedly made such a threat and later retracted it when he discovered that he had not been given a ''true picture of the situation.''

The case was heard by the court without a jury and defendant city undertook to cross-examine the plaintiff, but in each instance the court sustained the objections to the questions. Thereupon, the defendant made a tender and offered to show that the original appointment of the plaintiff was an emergency appointment which continued until after the effective date of the civil service ordinance; that the plaintiff had never qualified for the appointment he claimed and that no such qualifying examination had ever been given. This offer was refused and the court thereupon ordered judgment for the plaintiff according to the prayer of the supplemental complaint. The city appealed.

In its brief, the defendant has assigned some five errors but the determination of the question of whether the court's rulings were correct in denying the right to cross-examine Mr. Wright will dispose of all the assignments. What transpired when he was first appointed April 1, 1933, does not have any bearing on the question. He served over a year under that appointment and received the salary of assistant chief of police. About a year later the office was abolished by the city commission. During the next four or five years, or until December 5, 1941, the plaintiff served in other capacities on the police force. But on that date, December 5, 1941, the city commission, by Ordinance No. 3205, re-established the office of assistant chief of police and the civil service board immediately certified the name of plaintiff and recommended him as eligible for appointment. The civil service board determined that he was not guilty of

the charges that had been filed and withdrawn and adjudged that he be reinstated as assistant chief of police. The findings of the civil service board were stated in a letter dated December 11, 1941, signed by the secretary of the civil service board and directed to Don C. Steward, acting chief of police of the City of Phoenix. The letter, among other things, said:

"This will serve to advise you that at a meeting of the Civil Service Board of December 9th, in the matter of Charles H. Wright, recently dismissed as Chief of Police in consideration of the withdrawal of formal charges against Mr. Wright affecting his position in the classified service, the following motion was unanimously carried: That in view of the action of the City Manager in withdrawing charges against Charles Wright as pending before this body, that the removal of these charges be construed as permanent removal, and that Charles Wright be held as not guilty of these charges, and that he be reinstated to his former position of Assistant Chief of Police as of December 5, 1941, with full salary applying from that date. This will serve as the authority of the Civil Service Board to return Mr. Wright to the position of Assistant Chief of Police, effective as of December 5."

Since that time it repeatedly, or twice a month, certified the correctness of the payroll of the city when that payroll contained the classification, rate of pay, and name of plaintiff, in the position of assistant chief of police.

These adjudications of the board are the same as judicial opinions and courts give them the same respect as the judgments of other legal tribunals. This court has refused to permit a collateral attack upon a determination of the civil service board. In the case of the *City of Phoenix* v. *Sanner,* 54 Ariz. 363, 95 Pac. (2d) 987, 988, the city refused to pay the salary of an employee who alleged he had been illegally laid off. Suit was brought by the employee to

recover the salary alleged to have accrued during the period he was idle. Sanner, the civil service board stated, was to be considered a certified employee of the City of Phoenix and this court held that this was "a finding that plaintiff was a certified employee of the defendant under the protection of the civil service ordinance and regulations issued in pursuance thereof."

No attempt was made by the city to question or review the board's finding but at the trial the city argued, as it does in this instance, that Sanner was an employee by sufferance, unprotected by civil service. The court stated,

"We think we need consider but one thing, and that is whether the question of his status is subject to review by the courts in this proceeding. It is the universal rule that a judgment duly rendered, which has become final, is not subject to collateral attack, but may be questioned only in a direct proceeding of a proper nature. This rule against the collateral impeachment of judicial decisions applies to the determinations of different officers and boards of officers who, although they do not strictly speaking constitute a court, are called upon to act judicially in matters of administration. *City of Chicago* v. *Campbell,* 118 Ill. App. 129. . . .

"In the present case the civil service board of the city of Phoenix was created under the charter powers for the express purpose of determining just such questions as are at issue in the present case. It had jurisdiction to determine the status of plaintiff in regard to the civil service laws, rules and regulations. It did determine his status at three separate times, after the present ordinance went into effect, and its judgments were regular upon the face of the record made by it. We think under such circumstances the only way that the finding of the board could be attacked was by a direct proceeding, and that the correctness of its judgment as to the status of plaintiff

could not be questioned in a collateral one. That the defense in the present case is a collateral attack upon the judgment of the board is obvious.''

Sanner was laid off and performed no services during the period for which he brought suit. In this case Wright fully performed all the duties of his office during the period of non-payment of his salary and the city has had the benefit of his services. Both the civil service board and the city commission have decreed that he is entitled to the position and certainly no other person in the classified service claimed any superior right to the office of assistant chief of police.

We, therefore, think that the purported evidence tendered by the city is a collateral attack on the decisions and certifications of the civil service board to the effect that plaintiff was assistant chief of police and that the rule laid down in the Sanner case should be followed. If the defendant objects to the civil service board's decision, it must attack the findings by a direct proceeding.

The judgment of the lower court is affirmed.

ROSS and STANFORD, JJ., concur.