IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STEFANI MCMICHAEL-GOMBAR, *Petitioner/Appellant*,

*v.*

PHOENIX CIVIL SERVICE BOARD, et al., *Respondents/Appellees*.

---

CITY OF PHOENIX, *Real Party in Interest/Appellee.*

No. 1 CA-CV 21-0469
FILED 6-23-2022

---

Appeal from the Superior Court in Maricopa County
No. LC2020-000308-001
The Honorable Timothy J. Thomason, Judge

**VACATED AND REMANDED**

---

COUNSEL

Steven J. Serbalik, Esq., Scottsdale
By Steven J. Serbalik
*Counsel for Petitioner/Appellant*

Gammage & Burnham, PLC, Phoenix
By Richard K. Mahrle
*Counsel for Respondents/Appellees City of Phoenix Civil Service Board*

Ryan Rapp Underwood & Pacheco, PLC, Phoenix
By Polly S. Rapp
*Counsel for Respondent/Appellee City of Phoenix*

---

**OPINION**

Judge Angela K. Paton delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Vice Chief Judge David B. Gass joined.

---

**P A T O N**, Judge:

**¶1**         Retired City of Phoenix Police Sergeant Stefani McMichael-Gombar appeals from the superior court's order declining special action jurisdiction over her complaint against the City of Phoenix ("City"), the City of Phoenix Civil Service Board ("Board" or "Civil Service Board"), and the individual members of the Board, for failing to allow her to present evidence that a sanction against her violated her First Amendment rights.

**¶2**         We hold, as a matter of first impression, that the unique language of the Phoenix City Charter requires the Civil Service Board to consider McMichael-Gombar's argument and evidence that a sanction against her violated her First Amendment rights as a citizen. We therefore vacate the superior court's order and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

**¶3**         The City suspended McMichael-Gombar for twenty-four hours for a post she made on her private Facebook page that allegedly violated the Phoenix Police Department's Social Media Policy. The substance of her post is not in the record. She appealed the suspension to an appointed hearing officer through the City's personnel system. *See* Phoenix Interim Personnel Rule ("IPR") 22(d). McMichael-Gombar did not dispute making the post but argued the Social Media Policy was "overbroad and unconstitutional" and the sanction "excessive" given that her post was private. *See id.* at (e)(3)(B). The City moved in limine to preclude her from presenting evidence on the constitutionality of the Social Media Policy or "how it impacted her ability to participate in her private affairs and express her First Amendment rights" at the hearing. The hearing officer granted the City's motion and subsequently upheld her suspension.

¶4          McMichael-Gombar appealed the hearing officer's rulings to the Civil Service Board. *See id.* at (i). She asserted that the Social Media Policy was "overbroad and unconstitutional - both on its face and as applied." The Board's attorney advised the Board that, consistent with the Board's legal position since 1979, its role did not include considering constitutional issues, noting that "[w]e have volunteers from the community on the Civil Service Board. They are not constitutional scholars." The Board upheld the hearing officer's grant of the motion in limine and McMichael-Gombar's sanction without considering McMichael-Gombar's constitutional arguments.

¶5          McMichael-Gombar sought discretionary special action review in the superior court. The court declined to take jurisdiction, reasoning in favor of the Board's position: "[t]he Board had the obligation to ensure that the City proved that the charges against petitioner were true and that the level of discipline was appropriate. Petitioner was free to present evidence that was relevant to these matters. The Board did what it was required to do."

¶6          McMichael-Gombar timely appealed the superior court's final order. *See* Ariz. R. Civ. P. 54(c). We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12–2101(A)(1). *See also Bridgeman v. Certa*, 251 Ariz. 471, 473, ¶¶ 2-3 (App. 2021) (discussing A.R.S. § 12-2101(A)(1)).

## DISCUSSION

¶7          McMichael-Gombar argues that the Board erred when it prohibited her from raising her constitutional arguments to the Board. We agree. The Board relied on an incorrect reading of the Phoenix City Charter in concluding that it could not consider McMichael-Gombar's constitutional arguments.

### I.      Standard of Review

¶8          This action comes as an appeal from a denial of jurisdiction over a special action. "We conduct a bifurcated review of an appeal taken from a non-statutory special action initiated in the superior court." *Files v. Bernal*, 200 Ariz. 64, 65, ¶ 2 (App. 2001) (citing *Bazzanella v. Tucson City Ct.*, 195 Ariz. 372 (App. 1999)). If the superior court declined jurisdiction, we ordinarily limit our review to whether the superior court abused its discretion, and if so, remand for the court to take jurisdiction. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92 (App. 1979) (citing *Genda v. Super. Ct.*, 103 Ariz. 240 (1968)). "But, when the superior court's ruling hinge[s] on pure issues

3

of law, we review its legal conclusions de novo." *Ariz. Libertarian Party, Inc. v. Bd. of Supr's of Cochise Cnty.*, 205 Ariz. 345, 346, ¶ 2 (App. 2003) (cleaned up).

**¶9** The superior court based its ruling declining jurisdiction on a finding that the Board had not abused its discretion, assessing the merits of the special action claim. *See* Ariz. R.P. Spec. Act. 3(c). Because this is a question of law, we must address the merits de novo. *Ariz. Libertarian Party*, 205 Ariz. at 346, ¶ 2 (quoting *Norgord v. State ex rel. Berning*, 201 Ariz. 228, 230, ¶ 4 (App. 2001)).

> **II.** **The City Charter requires the Civil Service Board to consider employees' constitutional arguments when reviewing disciplinary actions.**

**¶10** The critical issue is whether the Board's action was "illegal in that it was arbitrary, capricious or involved an abuse of discretion." *Woerth v. City of Flagstaff*, 167 Ariz. 412, 417 (App. 1990) (quoting *City of Tucson v. Mills*, 114 Ariz. 107, 111 (App. 1976)). A review of a city personnel board decision is limited. *Woerth*, 167 Ariz. at 417. The court's role is not to "consider the propriety of the [Board's] findings nor substitute its judgment for that of the [Board]." *Id.* (quoting *Mills*, 114 Ariz. at 111). An error of law, however, constitutes an abuse of discretion. *Hubert v. Carmony*, 251 Ariz. 531, 533, ¶ 7 (App. 2021) (citing *State v. Bernstein*, 237 Ariz. 226, 228, ¶ 9 (2015)); *see Maricopa Cnty. Sheriff's Off. v. Maricopa Cnty. Emp. Merit Sys. Comm'n*, 211 Ariz. 219, 224, ¶¶ 22-24 (2005) (reversing merit commission decision based on an incorrect application of the law). We review questions of law de novo, including the interpretation of a city charter. *Piccioli v. City of Phoenix*, 249 Ariz. 113, 118, ¶ 15 (2020) (citing *Twin City Fire Ins. Co. v. Leija*, 244 Ariz. 493, 495, ¶ 10 (2018)).

> **a. The City Charter and Personnel System**

**¶11** A city charter is "effectively, a local constitution." *City of Tucson v. State*, 229 Ariz. 172, 174, ¶ 10 (2012) (citing Ariz. Const. art. 13, § 2). When interpreting a city charter, we give words their ordinary meaning, *Piccioli*, 249 Ariz. at 118, ¶ 15 (citing *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 562, ¶ 14 (2017)), unless the context suggests otherwise. *Piccioli*, 249 Ariz. at 118, ¶ 15 (citing *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017)). In interpreting a specific city charter provision, we also examine associated charter provisions. *Piccioli*, 249 Ariz. at 118, ¶ 15 (citing *Stambaugh*, 242 Ariz. at 509, ¶ 7).

¶12        A merit board "is bound to act in accordance with" the City Charter provision which created it, "and the rules and regulations which [the board] has established under" that authority. *See Stant v. City of Maricopa Emp. Merit Bd.*, 234 Ariz. 196, 200, ¶ 13 (App. 2014) (quoting *City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 245 (1939)). "As a City Charter institution, the [Phoenix] Civil Service Board's authority and powers are pre-eminent over any board, commission or institution created by City ordinance when touching upon the same subject matter." *City of Phoenix v. Phoenix Emp. Rels. Bd.*, 207 Ariz. 337, 341, ¶ 12 (App. 2004) (citing *Paddock v. Brisbois*, 35 Ariz. 214 (1929)).

¶13        Here, the superior court correctly looked to the City of Phoenix Charter and the Board's duties in its analysis. *See generally* Phoenix, Ariz., Charter, Ch. XXV, "Personnel System," §§ 1 (Purpose and policy), 2 ([Composition of the] Civil Service Board), 3 (Powers and duties of the Board).

¶14        Chapter XXV, Section 1 of the City Charter requires the City to establish a merit system according to specified merit principles. Section 2 creates the Civil Service Board, consisting of "five (5) residents, citizens and electors of the City." Section 3 enumerates the Board's specific powers and duties. For example, Section 3(2) requires the Board to submit advisory reports to the Phoenix City Council "regarding the activities of the Board *as they relate to the application of merit principles in City personnel management*." (Emphasis added). Section 3(3) provides that "the Board shall hear appeals from disciplinary demotions, discharges, and suspensions by classified employees who have completed the prescribed probationary period. The Board may delegate the authority to conduct hearings to hearing officers. The decisions of the Board shall be final and binding." Section 3(5) authorizes the Board to "[h]ear appeals from classified employees from interpretations of the personnel rules approved by the Council." Section 6 designates the City Manager as the City's Personnel Official, responsible for "[a]dminister[ing] all the provisions of [Chapter XXV] and of the personnel rules not specifically reserved to the Civil Service Board."

¶15        The personnel system is governed by the "merit principles" outlined in Chapter XXV, § 1, including the obligation to protect the constitutional rights of applicants and employees as citizens. Phoenix, Ariz., Charter, Ch. XXV, § 1(2). Unique among merit principles, only Section 1(2)(e) specifically mentions that it is to be applied in "all aspects of personnel administration." Similarly, among city government divisions given responsibility pursuant to Chapter XXV, only the Board is expressly

charged with any specific duty concerning the merit principles as a whole. *Id.* at § 3(2).

### b. The language of the City Charter is uniquely protective of constitutional rights in personnel administration.

**¶16** When interpreting a statute or constitutional provision, "[w]e will give effect to each sentence and word so that provisions are not rendered meaningless." *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249, ¶ 8 (App. 2006) (citing *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003)). "In interpreting statutes, we look to the plain language as the most reliable indicator of meaning." *Powers v. Carpenter*, 203 Ariz. 116, 118, ¶ 9 (2002) (citing *State v. Williams*, 175 Ariz. 98, 100 (1993)).

**¶17** The cornerstone of our analysis is the "Purpose and Policy" provision of Chapter XXV of the City Charter which provides:

Sec. 1. Purpose and policy.

> 1. It is the purpose of this chapter to designate those City employees in the classified services; set forth the rights and privileges of those employees; and to state the City's obligations in establishing and maintaining a merit system.

> 2. The City has determined the necessity of establishing a merit system of personnel administration based on merit principles and professional methods governing the appointment, tenure, promotion, transfer, layoff, separation, discipline, and other incidents of employment relating to City employees. These merit principles include:

>> a. Recruiting, selecting and advancing employees on the basis of their relative ability, knowledge, and skills, including open consideration of qualified applications for initial appointment;

>> b. Providing equitable and adequate compensation;

>> c. Training employees, as needed, to assure high-quality performance;

>> d. Retaining employees on the basis of the adequacy of their performance, and separating employees whose inadequate performance cannot be corrected;

e. *Assuring* impartial treatment of applicants and employees in *all aspects of personnel administration* without regard to political affiliation, race, color, national origin, sex, religious creed or handicap, and *with proper regard* for their privacy and *constitutional rights as citizens*[]

. . . .

Phoenix, Ariz., Charter, Ch. XXV, § 1 (emphasis added).

¶18        To determine the ordinary meaning of the Phoenix Charter, we look to established and widely used dictionaries. *See Stout v. Taylor*, 233 Ariz. 275, 278, ¶ 12 (App. 2013) (citing *Special Fund Div. v. Indus. Comm'n of Ariz.*, 232 Ariz. 110, 113, ¶ 12 (App. 2013)). As relevant here, "assure" means "to cause to know surely; reassure," "to pledge or promise; give surety of; guarantee," "to make (a future event) sure; ensure," or "to secure or confirm; render safe or stable." *Assure*, Random House Webster's Unabridged Dictionary (2d ed. 2001). To give proper "regard" is "to have or show respect or concern for" or "to take into account; consider," or "to pay attention." *Regard*, Webster's, *supra*. And this constitutional-rights merit principle permeates the inquiry in "all aspects of personnel administration." *See* Phoenix, Ariz., Charter, Ch. XXV § 1(2)(e). Thus, while other merit principles may fall under the Section 6 City Manager delegation provision, this provision is specifically applicable to *all* Chapter XXV personnel administration mechanisms. *See id.*

¶19        The Charter's directive to the Phoenix personnel system to "[a]ssur[e] impartial treatment . . . with proper regard for [employees'] privacy and constitutional rights as citizens" is unique among the personnel systems adopted by Arizona's charter cities. *See generally id.* Including Phoenix, four Arizona charter cities have adopted a Civil Service Board or Commission system as part of their personnel management systems, but only Phoenix has adopted language requiring its personnel system to "[a]ssur[e]" employees' and applicants' constitutional rights and privacy are given "proper regard" "in all aspects of personnel administration." *Compare id.*, *with* Bisbee, Ariz., Charter, Art. IV, § 4.06(c)*; and* Scottsdale, Ariz., Charter, Art. V, § 2 and Scottsdale Rev. Code § 14-1.1*; and* Tucson, Ariz., Charter, Ch. XXII.

¶20        Phoenix's language regarding constitutional rights is also unique even considering the four charter cities (Chandler, Douglas, Mesa, Tempe) that have adopted a Merit System Board. *Compare* Phoenix, Ariz.,

Charter, Ch. XXV, § 1(2)(e), *with* Chandler, Ariz., Charter, Art. IV, § 4.02 and Chandler City Code § 4.02; *and* Douglas, Ariz., Charter, Art. IV, § 6 and Douglas City Code, Ch. 2.64; *and* Mesa, Ariz., Charter, Art. IV, §§ 402-403 and Mesa City Code, §§ 2-5-1, 2-18-1—3; *and* Tempe, Ariz., Charter, Art. IV, §§ 4.01-.02. All remaining charter cities have adopted a personnel system that does not establish a Merit System Board or Civil Service Board. *See Charter Government Provisions in Arizona Cities*, League of Ariz. Cities & Towns (May 2015), http://azleague.org/ArchiveCenter/ViewFile/Item/250.

**¶21** We cannot construe this Charter assurance as "mere surplusage." *See Welch v. Cochise Cnty. Bd. of Supr's*, 251 Ariz. 519, 524, ¶ 15 (2021) (citing *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019)). Thus, the Phoenix Charter required the Board to treat McMichael-Gombar impartially, give proper regard to her constitutional rights as a citizen, and take these rights into account and consider them when adjudicating her sanction.

### c. The City's arguments concerning delegation and relief fail.

**¶22** The City contends that because there is no express delegation of power to the Civil Service Board to enforce merit principles, the responsibility for this role is delegated to the City Manager acting as Personnel Officer. *See* Phoenix, Ariz., Charter, Ch. XXV, § 6(1). This argument fails for two reasons.

**¶23** First, the Section 1(2)(e) merit principle applies to "all aspects of personnel administration." *Id.* at § 1(2)(e). We, therefore, distinguish Phoenix's constitutional-rights merit principle from merit principles that apply to limited circumstances. These limited principles include "[r]ecruiting, selecting and advancing employees," with which the Board has no express or implied charter or code role and therefore *must* fall under the purview of the City Manager or Phoenix City Council. *Compare id.* at § 1(2)(e), *with* § 1(2)(a)-(d), (f). Those other merit principles also lack the proviso requiring consideration by "all aspects" of the personnel system. The superior court read this clause in isolation—finding that because this merit principle applies to the whole system, the Board need not apply it. But the language of the Charter does not contain a limitation on which aspects of the personnel system apply this merit principle. In fact, as noted *supra* at ¶¶ 14-15 and *infra* at ¶ 24, ¶ Section 3 directly contradicts the superior court's interpretation. *See id.* at § 3(1)-(3). The delegation to the City Manager of other powers and duties does not constrain consideration of an otherwise universal principle.

**¶24** Second, we do not read the merit principles to be "powers" or "duties" delegated under Section 6(1). Of all the city government divisions identified in Chapter XXV, only the Civil Service Board is regularly required to report to the City Council "regarding the activities *of the Board* as they relate to the application of merit principles in City personnel management." *See id.* § 3(2) (emphasis added). Thus, the merit principle not only applies to the Board in its role as a component of personnel administration, but the Charter expressly requires the Board to report on its application of these principles to the City Council. Indeed, no similar language clarifies the City Manager's role or Council's role in applying merit principles. To the extent any conflict can be read between the delegation provision and the constitutional-rights merit principle or the duties of the Board, we view the latter provisions as being specific reservations of power to the Board, and therefore controlling over a more general delegation provision. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183-88 (2012) (discussing the general/specific canon of construction).

**¶25** Here, the Board upheld the hearing officer's preclusion of evidence and testimony relating to the alleged violation of McMichael-Gombar's constitutional rights. The Board's attorney stated that based on the City's longstanding position, the Board did not address constitutional rights, which were reserved for vindication by the courts. But the City's policy of limiting evidence on constitutional rights, longstanding as it may be, ignores the Board's directive to assure the constitutional treatment of employees. The Board is empowered to secure and make safe the rights and fair treatment of employees and applicants by the City Charter. *See* Phoenix, Ariz., Charter, Ch. XXV, §§ 1(2)(e), 3(1)-(3). But the Board and hearing officer purported to excuse themselves from giving *any* regard to McMichael-Gombar's constitutional rights under the First Amendment through their interpretation of the Phoenix Charter, which was error. *See generally* U.S. Const. amend. I. The Phoenix Charter plainly requires the Board to consider and take evidence and argument concerning McMichael-Gombar's constitutional rights when evaluating her sanction.

**¶26** The City argues that McMichael-Gombar changed her requested relief from demanding the Board find the Social Media Policy unconstitutional to requesting the superior court allow her simply to "present relevant evidence related to the merit principle contained in the Phoenix City Charter" and back again. The record is less than clear on this point, but the Board, in its answer to the special action complaint, admitted McMichael-Gombar's claim that she "was not allowed to . . . present evidence . . . [as to] how [the Social Media Policy] impacted her ability to

participate in her private affairs and express her First Amendment rights." And the Board unequivocally argued to the superior court that it need not consider the merit principle of giving proper regard for constitutional rights. Whatever else McMichael-Gombar requested, the Board owed "proper regard" of her constitutional rights when taking evidence and evaluating her suspension. To the extent she argues the Board can declare a policy unconstitutional in a manner that binds future Boards or city agencies, as discussed below, we do not agree.

### d. How the Board is to apply Section 1(2)(e)'s Merit Principle.

¶27 Under Chapter XXV, § 1(2)(e) of the Phoenix Charter, regardless of whether the Board ultimately rejects the substance of McMichael-Gombar's First Amendment claims, it must at least take evidence and argument concerning whether the sanction gives proper regard to those rights.

¶28 Both the City and the Board argue that such a directive would take the Board beyond its role by requiring it to consider legal issues. We disagree. The Board's primary role is that of a factfinder, but the City concedes that in affirming the hearing officer's rulings the Board *separately affirmed* the preclusion of McMichael-Gombar's evidence and argument—a purely legal issue that required the Board to act as more than a factfinder. *Cf. Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 166, ¶ 55 (App. 2007) (reviewing evidentiary ruling predicated on a question of law de novo (citing *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10 (App. 2000))). The apparent longstanding practice and interpretation of the City's charter by the City or the Board does not supplant this court's obligation to view the City charter as "a local constitution" governing the exercise of the Board's power. *See Wolkin v. Civ. Serv. Comm'n of Tucson*, 21 Ariz. App. 341, 344-45 (1974) ("When the rules promulgated by the Commission are violative of the Charter provisions the Commission lacks jurisdiction to implement the rules."). The Board erred as a matter of law by finding that it need not consider the merit principle of "proper regard for [employees'] privacy and constitutional rights as citizens" when McMichael-Gombar raised it.

¶29 The superior court noted that "[c]onstitutional issues should be decided by the courts, not boards or panels of citizens." This is only partially correct. The non-lawyer or volunteer composition of a board does not render it incapable of considering the impact of its decisions on the exercise of the constitutional rights of those appearing before it. *Cf.* Ariz. Const. art. 2, § 2 ("All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and

are established to protect and maintain individual rights."). This is especially true, where, as here, the text of the Phoenix Charter nonetheless requires the Board to consider constitutional and privacy concerns. *See* Phoenix, Ariz., Charter, Ch. XXV, § 1(2)(e).

¶30 We are aware of no authority that establishes a bright-line rule elevating constitutional rights beyond those legal issues—for instance, jurisdiction or the application of ordinances—that a state or city board similarly staffed with laypersons or members of non-legal professions necessarily considers in the lawful exercise of its power. *See e.g.*, A.R.S. §§ 32-106(A)(6), -1307(B)(3) (allowing the Arizona Board of Technical Registration and the State Board of Funeral Directors and Embalmers to compel witness attendance and take testimony concerning matters coming "within [their] jurisdiction"); *see also Wonders v. Pima Cnty.*, 207 Ariz. 576, 578, ¶ 7 (App. 2004) (County Board of Adjustment empowered by statute to interpret zoning ordinances (citing A.R.S. § 11-807(B)(1))). "[M]erit boards . . . are not judicial bodies, but administrative bodies *performing judicial functions*" and these functions necessarily include interpreting their governing law and applying legal principles. *Woerth*, 167 Ariz. at 416 (citing *Farish v. Young*, 18 Ariz. 298, 303-04 (1916)) (emphasis added); *see City of Phoenix v. Wright*, 61 Ariz. 458, 462-63 (1944) (explaining the Board has "jurisdiction to determine the status of plaintiff in regard to the civil service laws, rules and regulations" and its decisions were to be given "the same respect as the judgments of other legal tribunals." (quoting *City of Phoenix v. Sanner*, 54 Ariz. 363 (1939))). Indeed, IPR 22(l) already delegates the interpretation of personnel rules, in part, to the Board. In dealing with legal matters, the Board has the aid of its attorney, the arguments of the parties and counsel before it, and is not charged with seeking out and resolving constitutional issues not presented. *See* Phoenix, Ariz., Charter, Ch. XXV, § 1(2)(e); IPR 22(i)(5). Thus, this charter provision does not leave the Board unaided when it conducts the constitutional interpretation with which it is charged.

¶31 In sum, the Phoenix Charter gives the Phoenix Civil Service Board a necessarily more expansive role than mere factfinder. The people of Phoenix have chosen to require the Board to ensure that covered employees' discipline respects their constitutional rights and privacy. The Board need not determine whether the Social Media Policy itself is unconstitutional either facially or as applied. It need only determine whether the sanction gives "proper regard" to McMichael-Gombar's constitutional rights. Indeed, the power of the Board is only the power to review an individual sanction; it possesses no mechanism to bind future Boards or other agencies. *See generally* Phoenix, Ariz., Charter, Ch. XXV,

§ 3; IPR 22(j) (with respect to Board decisions only "a record of the final action" is retained among the rest of the written record). Thus, we do not agree with the City that this will require the Board to opine at length on constitutional law or issue opinions discoursing on *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) or *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968). The Board's rules do not require it to state how it weighed the evidence or balanced constitutional principles. *See generally* IPR 22(i)–(j). Giving "proper regard" to constitutional rights and privacy is all this merit principle requires the Board to do, and the Board's structure does not necessarily require lengthy, technical explanations of its rationale. *See* Phoenix, Ariz., Charter, Ch. XXV, § 1(2)(e).

### e. Relief on Remand

¶**32** The parties do not ask us to decide the merits of the disciplinary action, nor could we on this record. But because the Board abused its discretion by declining to consider McMichael-Gombar's constitutional rights in reviewing her sanction, the superior court erred in affirming the Board's decision. Accordingly, we vacate the superior court's ruling. We further direct the superior court to accept jurisdiction of the special action, issue an order vacating the Board's determination, and remand the disciplinary matter for reconsideration. On remand, the Board must consider McMichael-Gombar's constitutional rights in evaluating her sanction and allow her to submit evidence and argument accordingly.

### CONCLUSION

¶**33** We vacate the superior court's order and remand for further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: AA